No 24-472

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; AND SAN DIEGO COUNTY GUN OWNERS PAC,
*Plaintiffs- Appellants,*

*v.*

CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; AND COUNTY OF SANTA CLARA,
*Defendants- Appellees.*

---

On Appeal from the United States District Court
for the Southern District of California
No. 3:23-cv-00400-LL-VET
Hon. Linda Lopez

---

## PLAINTIFFS-APPELLANTS' MOTION FOR AN INJUNCTION PENDING APPEAL AND TO EXPEDITE APPEAL

---

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Ave., Ste. 106
Sacramento, CA  95825
(916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C.  20036
(202) 220-9600
dthompson@cooperkirk.com
ppaterson@cooperkirk.com
khrhodes@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs-Appellants certify as follows:

Firearms Policy Coalition, Inc. is a nonprofit organization. It has no parent corporation and no stock, so no publicly held corporation owns more than ten percent of its stock.

California Gun Rights Foundation is a nonprofit organization. It has no parent corporation and no stock, so no publicly held corporation owns more than ten percent of its stock.

San Diego County Gun Owners PAC is a nonprofit organization. It has no parent corporation and no stock, so no publicly held corporation owns more than ten percent of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

I.      INTRODUCTION ............................................................................ 1

II.     BACKGROUND.............................................................................. 3

     A.     Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review ...... 3

     B.     Section 1021.11 Violates Several Constitutional Provisions.............. 5

     C.     Section 1021.11's Fee-Shifting Regime Has Infringed On Plaintiffs' Constitutional Rights And Caused Them To Defer Suing Defendants ....................................................................................... 6

     D.     Procedural Background.................................................................... 7

III.    LEGAL STANDARD ...................................................................... 8

IV.    ARGUMENT ................................................................................... 8

     A.     Section 1021.11 Is Unconstitutional .................................................... 8

     B.     Plaintiffs Are Likely To Succeed On Appeal Because The District Court Erred In Dismissing The Case ................................................. 12

         1.     Plaintiffs Have Standing To Bring This Case ......................... 12

         2.     This Case Is Ripe ................................................................... 16

         3.     All Defendants Are Properly Joined In This Action And The Southern District Of California Is An Appropriate Venue ...... 16

     C.     Plaintiffs Will Be Irreparably Harmed Without An Injunction ........ 17

     D.     The Balance Of The Equities Favors An Injunction.......................... 18

     E.     Relief From This Court Is Appropriate Under Fed. R. App. P. 8(a)(2)(A) ........................................................................................ 19

     F.     Expedited Treatment Of The Appeal Is Necessary Given The Ongoing Irreparable Harm § 1021.11 Inflicts On Plaintiffs ............. 20

V.      CONCLUSION ............................................................................... 20

CERTIFICATE OF COMPLIANCE ................................................................ 21

CERTIFICATE OF SERVICE.......................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Am. Bev. Ass'n v. City & Cty. of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ............................................................18

*ARLPAC v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) ...........................................................16

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979)...................................................................13, 14

*Bland v. Fessler*,
  88 F.3d 729 (9th Cir. 1996) ..............................................................14

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) .............................................................14

*Bryant v. Woodall*,
  1 F.4th 280 (4th Cir. 2021) ..............................................................13

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) ............................................................18

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016)..............................................................13

*Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*,
  101 F.3d 1360 (10th Cir. 1996) .........................................................20

*Feldman v. Ariz. Sec'y of State's Off.*,
  843 F.3d 366 (9th Cir. 2016) ..............................................................8

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010)..........................................................................14

*In re Primus*,
  436 U.S. 412 (1978).......................................................................10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).......................................................................12

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .......................................................17, 18

*Miller v. Bonta*,
  646 F. Supp. 3d 128 (S.D. Cal. 2022).......................................... passim

*N.H. Right to Life Political Action Comm. v. Gardner*,
  99 F.3d 8 (1st Cir. 1996)..................................................................13

*Nat'l Ass'n for Advancement of Colored People v. Button*,
  371 U.S. 415 (1963).......................................................................10

*Nat'l Wildlife Fed'n v. Espy*,
  45 F.3d 1337 (9th Cir. 1995) ............................................................12

*Nken v. Holder*,
  556 U.S. 418 (2009).....................................................................8, 18

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992)..........................................................................11

iii

*Peace Ranch, LLC v. Bonta*,
   No. 22-16063, 2024 WL 562782 (9th Cir. Feb. 13, 2024) ...................14

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ...................................................................18

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) .................................................................18

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020) ..................................................................................17

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
   472 F.3d 1097 (9th Cir. 2006) ...................................................................8

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) ...............................................................8, 18

*Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*,
   992 F.3d 518 (6th Cir. 2021) ...................................................................20

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ..................................................................16

*Zepeda v. U.S. I.N.S.*,
   753 F.2d 719 (9th Cir. 1983) ...................................................................19

STATUTES

28 U.S.C. § 1391(b)(1) ...................................................................................17

Cal. Code Civ. Proc. § 1021.11(a) ...................................................................4

Cal. Code Civ. Proc. § 1021.11(b) ...................................................................4

Cal. Code Civ. Proc. § 1021.11(d)(3) .............................................................11

OTHER AUTHORITIES

Office of Governor Gavin Newsom, Press Release, *Governor Newsom Issues Statement After Court Strikes Down Provision of Gun Safety Law* (Dec. 19, 2022) ........................................................................................................5

# I. INTRODUCTION

California Code of Civil Procedure Section 1021.11 is an unconstitutional attempt by the State of California to deter firearms litigation by imposing a one-way fee-shifting penalty that applies only to plaintiffs bringing challenges to state or local firearms regulations. Under Section 1021.11, if a plaintiff challenging a firearm regulation loses a single claim—even if every other claim is successful and all the relief sought is obtained—the plaintiff *and the plaintiff's attorneys* are liable for the government's attorney fees.

In *Miller v. Bonta*, the Southern District of California held that this law violates the First Amendment right to petition, the Supremacy Clause in light of 42 U.S.C. Section 1988, and Fourteenth Amendment rights to due process and equal protection. 646 F. Supp. 3d 128 (S.D. Cal. 2022). The district court enjoined state officials from enforcing Section 1021.11.

Plaintiffs brought this suit to similarly enjoin several local jurisdictions that were not defendants in *Miller* and therefore are not bound by its injunction. Plaintiffs are organizations that, but for the risk of ruinous fee liability under Section 1021.11, would challenge firearms regulations in the Defendant jurisdictions. Before filing this case, Plaintiffs requested that Defendants stipulate to non-enforcement of Section 1021.11 in light of *Miller*, but Defendants refused to do so. As a result, Plaintiffs refrained from challenging Defendants' firearms regulations and filed this

1

lawsuit to remove the cloud hanging over their claims.

Notwithstanding the harm Section 1021.11 inflicts on Plaintiffs by depriving them of access to the courts, the district court dismissed this case for lack of standing. This Court's prompt intervention is necessary to remedy Plaintiffs' irreparable harm.

The district court's dismissal order was wrong and perpetuates Plaintiffs' injuries. The district court failed to apply the correct legal standard at the pleadings stage: Plaintiffs' allegations of harm must be taken as true and construed in their favor, whereas the district court faulted Plaintiffs for failing to present "concrete evidence that Defendants plan to enforce Section 1021.11." APP 6:2–3. That was not their burden. Moreover, courts generally *presume* that defendants will enforce newly enacted statutes like Section 1021.11 and allow pre-enforcement challenges when the government, as here, refuses to *disavow* enforcement of a statute chilling First Amendment protected activity.

Plaintiffs made an ample showing under the correct standards: (1) they identified the substantive Second Amendment claims they would bring; (2) they showed how each Defendant failed to disavow enforcement of Section 1021.11 if Plaintiffs were to pursue such litigation; and (3) they demonstrated how Defendants' responses have caused Plaintiffs to refrain from litigating. The district court's dismissal allows Defendants to continue benefiting from the deterrent effect of Section 1021.11, while leaving Plaintiffs in the same state they were in before the

2

case—unable to bring the underlying cases out of fear that Defendants would, in fact, attempt to enforce it. Section 1021.11's chilling effect prevails, and Defendants happily remain shielded from firearms litigation by an unconstitutional law.

Because Plaintiffs are irreparably harmed by Section 1021.11, the Court should enter an injunction pending appeal and enjoin Defendants from enforcing or applying the statute's fee-shifting penalty in firearms litigation initiated by Plaintiffs against these Defendants. And the irreparable harm Section 1021.11 inflicts on Plaintiffs provides good cause to expedite this appeal so the Court can promptly put to rest any lingering doubt about Section 1021.11's constitutionality.

## II.  BACKGROUND

Section 10211.11's fee-shifting regime has infringed on Plaintiffs' constitutional rights by depriving them of access to courts.

### A.  Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review.

Senate Bill 1327, enacted as Code of Civil Procedure § 1021.11, is based largely word-for-word on Texas's SB 8, enacted in 2021 in the abortion context. *See Miller*, 646 F. Supp. 3d at 1235. This case challenges Section 1021.11's radical effort to suppress firearms-related litigation by putting civil rights litigants and their attorneys on the hook for the government's attorney's fees if a case results in anything short of victory on every claim alleged in a complaint. Section 1021.11

3

provides, in relevant part:

> Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

Cal. Code Civ. Proc. § 1021.11(a).

Unlike any other ordinary "fee shifting" statute, Section 1021.11 says that a "prevailing party" *cannot be a plaintiff* who brings a case seeking declaratory or injunctive relief regarding a state or local firearm regulation. Code Civ. Proc. § 1021.11(e). And it says that a government defendant in a firearms case, including a local-government defendant, will be treated as a "prevailing party" if the court either "[d]ismisses *any* claim or cause of action" in the case, "regardless of the reason for the dismissal," or "[e]nters judgment in favor of the [government] party" "on any claim or cause of action." Cal. Code Civ. Proc. § 1021.11(b) (emphasis added). In simple terms, then, Section 1021.11 would enable government defendants to recover fees if a firearms plaintiff loses *on any claim* in the case, while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case. This means, among other things, that a plaintiff could be liable for the government's fees even if the plaintiff obtained all of the relief sought in the litigation—for example, if the plaintiff obtained declaratory and injunctive relief on a Second Amendment claim but the

4

plaintiff's Equal Protection claim was thereafter dismissed as moot.

Section 1021.11(c) further gives these "prevailing party" government defendants a three-year window to bring a state law action to recover their fees, notwithstanding that the vast majority of firearms litigation is brought under 42 U.S.C. § 1983 and federal law already provides for the treatment of attorney's fees in those cases pursuant to 42 U.S.C. § 1988(b).

**B.**    **Section 1021.11 Violates Several Constitutional Provisions.**

Due to the unique political circumstances in which it was enacted—namely, targeting firearms litigation as a form of protest over Texas's targeting of abortion litigation—Section 1021.11's unconstitutionality has never been in question. Indeed, the Attorney General's office refused to defend the law's constitutionality in *Miller*. 646 F. Supp. 3d at 1235 n.1. Governor Newsom intervened to assert a half-hearted defense of the law's constitutionality. *Id.* at 1235–36; *see id*. at 1236 n.3 (quoting Governor's merits brief stating that "the Governor and others have previously expressed doubts about the constitutionality of the nearly identical fee-shifting provision of Texas's S.B. 8"). And when he lost, not only did the Governor choose not to appeal, he celebrated the loss by "thank[ing] Judge Benitez" for "confirm[ing]" that the fee-shifting laws are unconstitutional. Office of Governor Gavin Newsom, Press Release, *Governor Newsom Issues Statement After Court Strikes Down Provision of Gun Safety Law* (Dec. 19, 2022).

In *Miller*, the Southern District of California held that Section 1021.11 violates the First Amendment, the Supremacy Clause, the Equal Protection Clause, and the Due Process Clause. The *Miller* court's reasoning is discussed further below. But the crux is as follows: "The principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws impinging on federal constitutional rights." *Miller*, 646 F. Supp. 3d at 1237.

**C.  Section 1021.11's Fee-Shifting Regime Has Infringed On Plaintiffs' Constitutional Rights And Caused Them To Defer Suing Defendants.**

After the *Miller* ruling, Plaintiffs Firearms Policy Coalition ("FPC") and California Gun Rights Foundation ("CGF") asked Defendants to stipulate that they would not enforce Section 10211.11, either in a current case or a case that Plaintiffs intend to file. Each Defendant refused, either affirmatively or by declining to respond. *See* Dist. Ct. Dkt. 1, Complaint, ¶¶ 46–55; Dist. Ct. Dkt. 20-1, Prelim. Inj. Br., 5:18–8:12 (detailing Plaintiffs' non-enforcement requests to each Defendant).

Two examples from Defendants' responses are worth highlighting. When refusing to stipulate to non-enforcement, Alameda County Counsel "encouraged" Plaintiffs' counsel to "be mindful of your [ethical] duties [and] obligations before you make averments in any pleading regarding the intentions of the Sheriff and the County" regarding Section 1021.11. APP 50. Counsel for San Jose refused to agree to non-enforcement, claiming that it was "inappropriate to respond" outside of the context of an actual lawsuit, and Counsel "decline[d] to comment on what positions

6

the City might take, or what remedies it might seek, in hypothetical future litigation against the City." APP 67–68. There was nothing "hypothetical" about FPC's plan. FPC had previously sued over San Jose's novel requirement that firearm owners pay an annual fee to a City-designated non-profit organization and obtain firearm-related insurance in April 2022, but dismissed the case four months later after Section 1021.11's passage. *Glass v. City of San Jose*, No 5:22-cv-2533 (N.D. Cal.). FPC advised that it would refile the same case if San Jose were ready to disavow enforcement after *Miller*, but San Jose demurred. APP 15, 20, 27, 63.

## D.    Procedural Background.

Plaintiffs filed this lawsuit in March 2023 seeking declaratory and injunctive relief preventing Defendants from relying on Section 1021.11 in firearms litigation against them. Twelve days later, the district court issued an Order to Show Cause directing Plaintiffs to explain why the case should not be dismissed for lack of standing, ripeness, improper venue, and joinder. Dist. Ct. Dkt. 18. More than eight months after the OSC was fully briefed, in January 2024, the district court dismissed the complaint and entered judgment for defendants. APP 1–9, 10.

After appealing, Plaintiffs sought an injunction pending appeal and requested an order shortening time on the motion. Dist. Ct. Dkt. 61, 62. The district court denied Plaintiffs' request for shortened time. APP 113–15.

## III. LEGAL STANDARD

This Court has authority to issue an injunction pending appeal pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C) and Federal Rule of Civil Procedure 62(g). "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). Courts consider four factors: "(1) whether the [injunction] applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a [injunction]; (3) whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). In short, "[i]n deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties." *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (cleaned up).

## IV.  ARGUMENT

### A.    Section 1021.11 Is Unconstitutional.

There is no real doubt that Plaintiffs will ultimately succeed on the merits of their underlying constitutional challenge to Section 1021.11. The effect of the district court's standing analysis, however, is that Plaintiffs cannot get that

determination until they actually face a claim for fees under the statute. Given the hostility shown toward Second Amendment claims, Plaintiffs (and their counsel) are justifiably concerned that their final vindication would require the expenditure of significant resources. Avoiding this chilling effect is the precise reason that courts presume that governments will enforce new statutes.

The core points of the constitutional analysis bear on the necessity for an injunction pending appeal. The Governor and Attorney General are enjoined from enforcing Section 1021.11 under *Miller*. The *Miller* court found that Section 1021.11 violates the First Amendment, is preempted under the Supremacy Clause by 42 U.S.C. Section 1988, and violates the Equal Protection and Due Process Clauses.

*First Amendment*. Section 1021.11 encourages state and local governments to push the constitutional envelope when crafting firearms regulations by threatening would-be plaintiffs who might challenge those regulations with a potentially ruinous fee award. As the court observed in *Miller*, "[t]he principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws impinging on federal constitutional rights." 646 F. Supp. 3d at 1237. "Laws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable." *Id.* at 1238. And the threat posed by Section 1021.11 extends beyond imposing financial ruin on would-be plaintiffs: the law imposes the same threat of fee liability on plaintiffs' attorneys and their law firms. The *Miller* Court

9

recognized that this scheme "does a disservice to the courts" through suppressing "novel," "substantial" claims, thereby "threaten[ing] severe impairment of the judicial function" by "insulat[ing] the Government's laws from judicial inquiry." *Id.* at 1240 (citations omitted).

Section 1021.11's obvious and impermissible purpose is to give state and local governments in California a free hand to regulate firearms by suppressing litigation over firearm regulations. Just as with prior attempts in our Nation's history to suppress disfavored civil rights litigation, *see, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963); *In re Primus*, 436 U.S. 412 (1978), Section 1021.11 improperly burdens the right of access to the courts. In short, Section 1021.11's fee-shifting penalty violates the First Amendment.

*Supremacy Clause*. Section 1021.11 directly conflicts with 42 U.S.C. Section 1988 by establishing a wholly separate state law fee regime in federal civil rights litigation. Indeed, Section 1021.11 purports to assert supremacy over federal law. The statute remarkably asserts that its fee-shifting provision applies regardless of what any federal court does in an underlying Section 1983 case: Section 1021.11 pronounces that government officials may plow ahead with a state court collection action even when "*[t]he court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." Cal. Code Civ. Proc.

10

§ 1021.11(d)(3) (emphasis added). Not only does "California's fee shifting provision turns [the federal] approach upside down," but "California attorney's fee-shifting construct goes beyond § 1988 by discouraging attorneys from representing civil rights plaintiffs." *Miller*, 646 F. Supp. 3d at 1242. Because Section 1021.11 "will have the effect of thwarting federal court orders enforcing Second Amendment rights through § 1988 attorney's fee awards," the statute "cannot survive." *Id.* at 1243.

*Equal Protection and Due Process Clauses*. A law cannot baselessly discriminate against the exercise of a constitutional right without violating the Equal Protection Clause. *See, e.g.*, *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Section 1021.11 discriminates against firearms plaintiffs and the viewpoint they are asserting, so the law also violates the Equal Protection Clause. "Where money determines not merely 'the kind of trial a man gets,' but whether he gets into court at all," *Miller* explained, "the great principle of equal protection becomes a mockery." 646 F. Supp. 3d at 1239 (citation omitted). That court further explained that due process separately "requires that a citizen be able to be heard in court" and therefore, "[w]here the financial cost is too high to enable a person to access the courts," there is a violation of due process. *Id*. at 1238. In sum, "[l]aws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable." *Id*.

11

**B.    Plaintiffs Are Likely To Succeed On Appeal Because The District Court Erred In Dismissing The Case.**

**1.    Plaintiffs Have Standing To Bring This Case.**

As detailed above, but for Section 1021.11's fee-shifting provisions, Plaintiffs would forthwith engage in firearms litigation against Defendants, but they (and their lawyers) have refrained from bringing these suits due to the law's threat of ruinous fee liability. Plaintiffs never would have brought this case if Defendants had simply disavowed their intention to use the statute when Plaintiffs filed their Second Amendment cases. Defendants refused to do so, thereby holding the obvious prospect of enforcing the statue over Plaintiffs' heads, which, in turn, has resulted in the unconstitutional deterrence of Plaintiffs' rights.

Despite this, the district court held that Plaintiffs have not shown an "actual or imminent injury" because they provided "no concrete evidence that Defendants plan to enforce Section 1021.11." APP 6:2–4. This is not the test for standing challenges at the pleading stage: Plaintiffs' allegations of harm must be "taken as true" by the district court and "construed in the light most favorable" to Plaintiffs. *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs have alleged the chilling effect required to establish standing.

And in any event, Plaintiffs did not even bear the burden of *alleging* a "concrete . . . plan to enforce" the statute. To the contrary, the district court's order ignores the *presumption* that Defendants *will* enforce the statute if Plaintiffs file the intended lawsuits and fail to prevail on every claim. *See, e.g.*, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("Courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'") (citation omitted); *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021) ("[L]aws that are 'recent and not moribund' typically do present a credible threat [of enforcement]. This is because a court presumes that a legislature enacts a statute with the intent that it be enforced.") (citations omitted). Particularly for "recently enacted" statutes, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996). This standard looks to defendants to provide the "compelling contrary evidence" by disavowing enforcement, but no such evidence exists here.

Thus, pre-enforcement challenges to statutes are justiciable when, as here, the government retains the *option* of enforcing an allegedly unconstitutional statute and has not disavowed it. In *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979), the Supreme Court rejected the argument, similar to Defendants' here, that a pre-enforcement challenge wasn't justiciable because statute "has not yet been

13

applied and may never be applied." *Id.* at 302. Where, as here, the government actor with authority to enforce the statute "has not disavowed any intention of invoking" the law, the plaintiff's "fear" of prosecution under the "allegedly unconstitutional statute is not imaginary or wholly speculative," and they have standing to enjoin its enforcement. *Id.* Likewise, in *Bland v. Fessler*, 88 F.3d 729, 737 n.12 (9th Cir. 1996), the Attorney General's statement that it "has not brought or indicated that it would bring any action" under a new statute fell "far short of a disavowal of enforcement." *See also Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (allowing pre-enforcement challenge and noting "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Brown v. Kemp*, 86 F.4th 745, 769 (7th Cir. 2023). "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future," and a plaintiff need not risk enforcement "in order to challenge [a] law's constitutionality." *Peace Ranch, LLC v. Bonta*, No. 22-16063, 2024 WL 562782, *3 (9th Cir. Feb. 13, 2024).

The district court's dismissal flouts these principles. Indeed, the order asserts that Plaintiffs' reliance on such principles "effectively puts the burden on Defendants to establish that there is no standing." APP 5:5–6. Plaintiffs always bear the burden of showing standing, and Plaintiffs made the necessary showing here. The cases outlined above demonstrate that Defendants can *rebut* Plaintiffs' showing

14

with "compelling contrary evidence" of a threat of enforcement—such as an express disavowal of any intention to enforce the statute.

That did not happen here. Defendants' oblique statements conspicuously stopped short of closing the door on enforcing the statute in the future. *See, e.g.*, APP 75:12–78:14 (arguing that Plaintiffs lacked standing "because Defendants have never signaled any intent to enforce or apply the state statute," and that "there is no legitimate risk that any entity would seek to invoke Section 1021.11"); APP 88:25– 89:2 (arguing that the *Miller* injunction "effectively discourages anyone . . . from even attempting to invoke Section 1021.11"). Before filing the motion for injunction pending appeal, Plaintiffs asked Defendants' counsel to state whether they would "oppose the motion or if they instead are now willing to disavow enforcement of Section 1021.11 (after obtaining a dismissal based on the representation that there was 'no legitimate risk' of its enforcement)." APP 109. The request to meet and confer was met with silence. APP 101.

Defendants' responses to Plaintiffs' non-enforcement requests, their briefing on the OSC, and their post-dismissal silence all demonstrate a *refusal* to disavow any intent to enforce Section 1021.11, so Plaintiffs' showing is unrebutted under *Babbit*, *Bland*, and the many cases requiring a disavowal. As it stands now, Defendants have retained the option of enforcing the law and are content to continue taking advantage of the statute to shield them from litigation.

At a minimum, Plaintiffs' self-censorship is sufficient to establish standing given the "'unique . . . considerations' in the First Amendment context [that] 'tilt dramatically toward a finding of standing'" in a pre-enforcement challenge. *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (citation omitted).

### 2.    This Case Is Ripe.

Plaintiffs' active and ongoing constitutional injury creates a ripe claim. When this suit was filed, Plaintiffs had already suffered a cognizable injury: they were forced to dismiss and continue to refrain from bringing constitutional challenges to Defendants' firearm regulations because Defendants had not agreed to refrain from enforcing Section 1021.11. Plaintiffs' "actual harm dispenses with any ripeness concerns." *ARLPAC v. Bayless*, 320 F.3d 1002, 1007 n.6 (9th Cir. 2003).

### 3.    All Defendants Are Properly Joined In This Action And The Southern District Of California Is An Appropriate Venue.

For the purposes of this motion, the district court's manifest error in dismissing the case for lack of standing is sufficient to justify relief. On the merits, Plaintiffs will likewise prevail in establishing that all Defendants are properly joined and that the Southern District of California is an appropriate venue. In brief:

Joinder is appropriate under Rule 20, because this case raises only a question of law, and that question is common to all Defendants: whether the Federal Constitution permits any Defendant to seek attorneys' fees from any Plaintiffs or Plaintiffs' attorneys under Section 1021.11. The district court's dismissal of the case

16

flouts core considerations guiding the exercise of discretion under Rule 20 to protect litigants' rights and promote judicial economy.

Venue is proper in the Southern District in the first instance because the City of San Diego and the County of Imperial both reside there, and the remaining Defendant entities all reside in California. *See* 28 U.S.C. § 1391(b)(1).

## C.     Plaintiffs Will Be Irreparably Harmed Without An Injunction.

Plaintiffs are irreparably harmed by Section 1021.11, which imposes a severe burden on their right of access to the courts and deprives them of the full opportunity to vindicate their Second Amendment rights. As the Supreme Court and this Court have repeatedly emphasized, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *accord Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam).

The constitutional violations manifested in Section 1021.11 have caused concrete harm to Plaintiffs here. The cloud imposed by the law has caused Plaintiffs to dismiss or refrain from bringing lawsuits challenging Defendants' firearms regulations that they believe are unconstitutional. While this case has been pending, FPC has been contacted by additional individuals who have potential separate claims against Defendants in this case, but Section 1021.11 prevents Plaintiffs from exercising their First Amendment rights to assert Second Amendment claims in

court. APP 97–98, 100–101. These significant and ongoing injuries far exceed the baseline for establishing irreparable harm in a constitutional context. *See Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019).

## D.    The Balance Of The Equities Favors An Injunction.

The third and fourth factors—"harm to the opposing party and weighing the public interest"—"merge when the Government is the opposing party." *Sierra Club*, 929 F.3d at 708 (quoting *Nken*, 556 U.S. at 435). Both factors favor an injunction.

At a fundamental level, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted); *accord Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Moreover, the balance "tips sharply" in Plaintiffs' favor because this Court "ha[s] consistently recognized the significant public interest in upholding First Amendment principles." *Am. Bev. Ass'n*, 916 F.3d at 758 (cleaned up). "[I]t is clear that it would not be equitable or in the public's interest to allow" violations of "the requirements of federal law, especially when there are no adequate remedies available." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 853 (9th Cir. 2009).

Conversely, the Defendants cannot be injured by an injunction pending appeal given Section 1021.11's patent unconstitutionality: the government "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719,

727 (9th Cir. 1983). Furthermore, the public interest is unquestionably served by preserving access to the courts for plaintiffs who seek to vindicate their constitutional rights, rather than by permitting the government to insulate certain laws from judicial scrutiny.

**E.      Relief From This Court Is Appropriate Under Fed. R. App. P. 8(a)(2)(A).**

Plaintiffs have adequately complied with Federal Rule of Appellate Procedure 8(a)(2)(A): They have filed a motion for an injunction pending appeal below. While that motion remains pending, waiting for the district court to rule is "impracticable" because Plaintiffs are suffering ongoing irreparable harm by being denied their right of to access the courts. Moreover, the order denying Plaintiffs' request for expedited consideration of the motion confirms that the district court does not credit Plaintiffs' claimed harm and that it remains confident in its dismissal for lack of standing:

> Plaintiffs' irreparable injury argument in the Ex Parte Application and the Motion for Preliminary Injunction does not provide a basis for the requested ex parte relief because, as this Court has found in its January 9, 2024 Order dismissing this action, Plaintiffs do not have standing to pursue their case. . . . As such, Plaintiffs have not made an adequate showing warranting the requested ex parte relief.

APP 115. Given the district court's commitment to its dismissal order, there is little doubt that the court will "fail[] to afford the relief requested" by Plaintiffs when it rules. As other circuits have recognized, Rule 8(a) does not require this Court to wait around for the district court under these circumstances. *See, e.g.*, *Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996)

19

("When the district court's order demonstrates commitment to a particular resolution, application for a stay from that same district court may be futile and hence impracticable."); *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 n.2 (6th Cir. 2021) (construing a district court's denial of expedited relief "as a denial of the [movant's] requested relief" under Rule 8(a), and considering the motion on its merits).

This Court's consideration of Plaintiffs' motion for is therefore appropriate.

**F. Expedited Treatment Of The Appeal Is Necessary Given The Ongoing Irreparable Harm § 1021.11 Inflicts On Plaintiffs.**

Circuit Rule 27-12 provides that an appeal may be expedited on a showing of "good cause," which includes when "irreparable harm may occur" if expedited treatment is not granted. Section 1021.11's threat of enforcement inflicts irreparable harm on Plaintiffs by unconstitutionally depriving them of access to the courts.

## V. CONCLUSION

For the foregoing reasons, this Court should enjoin Defendants from enforcing Section 1021.11 pending appeal and order the appeal expedited.

Respectfully submitted,

s/ Bradley A. Benbrook
Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Ave., Ste. 106
Sacramento, CA 95825

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

*Counsel for Plaintiffs-Appellants*

20

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the length limits permitted by Ninth Circuit Rule 27-1(1)(d) because this brief is fewer than 20 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

Dated: February 14, 2024

s/Bradley A. Benbrook
Bradley A. Benbrook

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Bradley A. Benbrook__
Bradley A. Benbrook