No 24-472

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————

FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; AND SAN DIEGO COUNTY GUN OWNERS PAC,
*Plaintiffs-Appellants,*

*v.*

CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; AND COUNTY OF SANTA CLARA,
*Defendants-Appellees.*

————————

On Appeal from the United States District Court
for the Southern District of California
No. 3:23-cv-00400-LL-VET
Hon. Linda Lopez

————————

## APPELLANTS' OPENING BRIEF

————————

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Ave., Ste. 106
Sacramento, CA 95825
(916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
khrhodes@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT .............................................................. 4

STATEMENT OF THE ISSUES ................................................................. 4

PERTINENT STATUTORY PROVISIONS ................................................. 5

STATEMENT OF THE CASE .................................................................... 6

I.      Section 1021.11 Creates A Discriminatory State-Law Fee-Shifting Regime Designed To Suppress Firearms Litigation And Insulate Firearms Regulations From Judicial Review ................................................. 6

II.     Section 1021.11 Violates Several Constitutional Provisions ......................... 8

III.    Section 1021.11's Fee-Shifting Regime Has Caused Plaintiffs To Self-Censor: Plaintiffs And Their Counsel Have Been Deterred From Asserting Challenges To Defendants' Firearms Regulations ...................................... 10

IV.     Procedural History ......................................................................... 12

SUMMARY OF THE ARGUMENT ......................................................... 13

LEGAL STANDARD ............................................................................. 18

ARGUMENT ....................................................................................... 19

I.      The District Court Erred In Dismissing The Case ................................... 19

        A.      Plaintiffs Have Pre-Enforcement Standing Because Their Proposed Conduct Falls Within Section 1021.11, And Defendants Have Not Disavowed Their Right To Enforce The Statute................................. 19

        B.      The Trial Court Ignored Defendants' Independent Enforcement Authority Under Section 1021.11 ....................................................... 24

        C.      Plaintiffs Have Standing Under Foundational First Amendment Principles.......................................................................................... 27

        D.      This Case Is Ripe ............................................................................. 29

        E.      All Defendants Are Properly Joined In This Action And The Southern District Of California Is An Appropriate Venue................................. 29

i

II.     The Court Should Reach The Merits, Find Section 1021.11 Unconstitutional, And Direct The District Court To Enjoin Defendants From Enforcing The Statute .................................................................................................... 33

        A.      The Proper Resolution Of The Merits Is Beyond Doubt: Section 1021.11 Is Unconstitutional For The Reasons Stated In *Miller* ......... 35

                1.      Section 1021.11's Fee-Shifting Regime Violates The First Amendment ............................................................................. 35

                2.      Section 1021.11's Fee-Shifting Regime is Preempted by 42 U.S.C. § 1988 ................................................................... 40

                3.      Section 1021.11's Fee-Shifting Regime Violates The Equal Protection And Due Process Clauses....................................... 44

        B.      Plaintiffs Will Suffer Injustice From The Delay Of Remand ........... 45

        C.      Plaintiffs' Constitutional Challenge To Section 1021.11 Is Purely Legal ................................................................................................ 46

CONCLUSION ................................................................................................... 47

STATEMENT OF RELATED CASES.................................................................. 48

CERTIFICATE OF COMPLIANCE ..................................................................... 49

CERTIFICATE OF SERVICE.............................................................................. 50

# TABLE OF AUTHORITIES

### CASES

*ACLU v. Florida Bar*,
999 F.2d 1486 (11th Cir. 1993) ........................................................26

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ...........................................................................40

*Ariz. Cattle Growers' Ass'n v. U.S. Fish and Wildlife*,
273 F.3d 1229 (9th Cir. 2001) .........................................................34

*Ariz. Right to Life Political Action Comm. v. Bayless*,
320 F.3d 1002 (9th Cir. 2003) ...........................................17, 28, 29

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ....................................................................15, 21

*Bd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*,
377 U.S. 1 (1964) .............................................................................38

*Berry v. Dep't of Soc. Servs.*,
447 F.3d 642 (9th Cir. 2006) ...........................................................18

*Bland v. Fessler*,
88 F.3d 729 (9th Cir. 1996) .................................................15, 21, 22

*Brown v. Kemp*,
86 F.4th 745 (7th Cir. 2023) ............................................................22

*Bryant v. Cal. Brewers Ass'n*,
585 F.2d 421 (9th Cir. 1978) ...........................................................31

*Bryant v. Woodall*,
1 F.4th 280 (4th Cir. 2021) ..............................................................20

*Cal. Motor Trans. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) .........................................................................36

*Cayuga Nation v. Tanner*,
824 F.3d 321 (2d Cir. 2016) .............................................................20

*Christiansburg Garment Co. v. EEOC*,
434 U.S. 412 (1978) .........................................................................41

*Consumer Fin. Prot. Bureau v. Howard L., P.C.*,
671 F. App'x 954 (9th Cir. 2016) .....................................................25

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .........................................................................40

*Ctr. for Individual Freedom v. Madigan*,
697 F.3d 464 (7th Cir. 2012) ...........................................................22

iii

*Cuprite Mine Partners LLC v. Anderson*,
  809 F.3d 548 (9th Cir. 2015).................................................33

*Deida v. City of Milwaukee*,
  192 F. Supp. 2d 899 (E.D. Wis. 2002)................................22

*Ex Parte Young*,
  209 U.S. 123 (1908)...........................................................26

*Fitzgerald v. Cnty. of Orange*,
  570 F. App'x 653 (9th Cir. 2014) ......................................34

*Fox v. Vice*,
  563 U.S. 826 (2011)...........................................................41

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992).............................................................40

*Guam v. Okada*,
  694 F.2d 565 (9th Cir. 1982) ............................................34

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................41, 43

*Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*,
  32 F. Supp. 3d 1143 (D. Idaho 2014) ...............................26

*In re Primus*,
  436 U.S. 412 (1978)................................................37, 38, 39

*Italian Colors Rest. v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) ..........................................27

*Iten v. Los Angeles*,
  81 F.4th 979 (9th Cir. 2023) .............................................18

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ...................................16, 25

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
  558 F.2d 914 (9th Cir. 1977)............................................31

*Legal Services Corp. v. Velazquez*,
  531 U.S. 533 (2001)...........................................................39

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) .......................................22, 28

*LSO, Ltd. v. Shroh*,
  205 F.3d 1146 (9th Cir. 2000) ..........................................27

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...........................................................20

iv

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ...................................................45

*Miller v. Bonta*,
   646 F. Supp. 3d 1218 (S.D. Cal. 2022) ....................................... passim

*N.H. Right to Life Political Action Comm. v. Gardner*,
   99 F.3d 8 (1st Cir. 1996) ......................................................20

*NAACP v. Button*,
   371 U.S. 415 (1963) .......................................................36, 37, 39

*Nat'l Wildlife Fed'n v. Espy*,
   45 F.3d 1337 (9th Cir. 1995) ...................................................19

*Neal v. Shimoda*,
   131 F.3d 818 (9th Cir. 1997) ...................................................18

*Newman v. Piggie Park Enters., Inc.*,
   390 U.S. 400 (1968) ...........................................................43

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992) .............................................................44

*Peace Ranch, LLC v. Bonta*,
   93 F.4th 482 (9th Cir. 2024) ...................................................18

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of HHS*,
   946 F.3d 1100 (9th Cir. 2020) .............................................18, 34, 46

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ........................................................40, 43

*Pocatello Educ. Ass'n v. Heideman*,
   504 F.3d 1053 (9th Cir. 2007) ..................................................34

*Quinn v. Robinson*,
   783 F.2d 776 (9th Cir. 1986) ...................................................34

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020) ............................................................45

*S. Bay Rod & Gun Club, Inc. v. Bonta*,
   646 F. Supp. 3d 1232 (S.D. Cal. 2022) ..........................................10

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ........................................................16, 25

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...........................................................39

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989) ...........................................................41

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ............................................................29

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ............................................................27

*Tweed-New Haven Airport Auth. v. Tong*,
  930 F.3d 65 (2d Cir. 2019) ............................................................21

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ............................................................31

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
  389 U.S. 217 (1967) ............................................................38

*United States v. Mississippi*,
  380 U.S. 128 (1965) ............................................................31

*United Transp. Union v. State Bar of Mich.*,
  401 U.S. 576 (1971) ............................................................38

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988) ............................................................27

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ............................................................6, 15, 25

**STATUTES**

28 U.S.C. § 1291 ............................................................4

28 U.S.C. § 1331 ............................................................4

28 U.S.C. § 1391(b)(1) ............................................................17, 33

42 U.S.C. § 1983 ............................................................8

42 U.S.C. § 1988 ............................................................40

42 U.S.C. § 1988(b) ............................................................8, 40

CAL. CODE CIV. PROC. § 1021.11(a) ............................................................7, 15, 25

CAL. CODE CIV. PROC. § 1021.11(b) ............................................................7

CAL. CODE CIV. PROC. § 1021.11(c) ............................................................8

CAL. CODE CIV. PROC. § 1021.11(d)(3) ............................................................42

CAL. CODE CIV. PROC. § 1021.11(e) ............................................................7

**OTHER AUTHORITIES**

Br. of Mass. et al. as *Amici Curiae* in Supp. of Pet'rs at 21, *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ............................................................8

H.R. Rep. No. 94–1558 (1976) ............................................................43

Jonathan F. Mitchell, *The Writ of Erasure Fallacy*,
104 Va. L. Rev. 933 (2018) .................................................................25

*Miller v. Bonta*, No. 3:22-cv-01446, Newsom Intervention Br. at 1, Doc. No. 31-1
(Dec. 9, 2022) ...........................................................................................9

Office of Governor Gavin Newsom, Press Release, *Governor Newsom Issues
Statement After Court Strikes Down Provision of Gun Safety Law* (Dec. 19,
2022) ..........................................................................................................9

**Rules**

Fed. R. Civ. P. 20(a)(2) ...........................................................................29

**Treatises**

7 Charles A. Wright & Arthur R. Miller,
Fed. Prac. & Proc. Civ. § 1652 (3d ed.) .............................................30

7 Charles A. Wright & Arthur R. Miller,
Fed. Prac. & Proc. Civ. § 1653 (3d ed.) .....................................31, 32

7 Charles A. Wright & Arthur R. Miller,
Fed. Prac. & Proc. Civ. § 1657 (3d ed.) .............................................30

## INTRODUCTION

California Code of Civil Procedure § 1021.11 is an unconstitutional scheme to suppress firearms litigation by imposing a one-way fee-shifting penalty that applies only to those bringing challenges to state or local firearms regulations. Under Section 1021.11, if a plaintiff challenging a firearm regulation loses a single claim—even if every other claim is successful and all the relief sought is obtained—the plaintiff *and the plaintiff's attorneys* are liable for the government's attorney fees.

In *Miller v. Bonta*, the Southern District of California held that this law violates the First Amendment right to petition, the Supremacy Clause, and the Fourteenth Amendment rights to due process and equal protection. 646 F. Supp. 3d 1218 (S.D. Cal. 2022). The district court in *Miller* enjoined state officials from enforcing Section 1021.11.

Plaintiffs brought this suit to similarly enjoin several local jurisdictions that were not defendants in *Miller* and therefore are not bound by its injunction. Plaintiffs are organizations that, but for the risk of ruinous fee liability under Section 1021.11, would challenge firearms regulations in the Defendant jurisdictions. Before filing this case, Plaintiffs requested that Defendants stipulate to non-enforcement of Section 1021.11 in light of *Miller*'s full-throated rejection of it on multiple grounds, but Defendants refused to do so. As a result, Plaintiffs refrained from challenging

Defendants' firearms regulations and filed this lawsuit to remove the threat of fee liability that effectively prevents them from litigating their claims.

Twelve days after the case was filed, the district court took the unusual step of issuing an order to show cause why the Complaint should not be dismissed for lack of standing. Ten months later, the district court dismissed the case, concluding that Plaintiffs had no standing because they had failed to present "concrete evidence that Defendants plan to enforce Section 1021.11." The district court also found that Plaintiffs lack standing because they are challenging a *state* statute, and the "proper defendant" in such a case is "the state official designated to enforce the rule."

The district court's dismissal order was wrong for several reasons and perpetuates Plaintiffs' injuries because they remain unable to bring challenges to Defendants' firearms regulations out of fear that Defendants will, in fact, enforce Section 1021.11. *First*, the district court failed to apply the correct legal standard for a pre-enforcement challenge like this one: Plaintiffs had no burden to offer "concrete evidence that Defendants plan to enforce" the statute. To the contrary, courts generally *presume* that defendants will enforce newly enacted statutes like Section 1021.11 and thus allow pre-enforcement challenges when the government, as here, refuses to *disavow* enforcement of a statute targeting constitutionally protected activity.

Plaintiffs made an ample showing under the correct standards governing pre-enforcement standing: (1) they identified the substantive lawsuits they would bring, each of which would trigger application of the fee-shifting statute if any claim were unsuccessful; (2) they showed how each Defendant failed to disavow enforcement of Section 1021.11; and (3) they demonstrated how Defendants' responses have caused Plaintiffs to refrain from initiating the litigation. In short, Plaintiffs adequately established standing to bring this action. And because Plaintiffs' injuries establish standing, their claims are ripe.

*Second*, the district court incorrectly held that only State officials—and not local jurisdictions like Defendants—are the proper defendants in cases challenging Section 1021.11. This was error because Section 1021.11 confers independent enforcement authority on local jurisdictions too. The law states that every "political subdivision," "government entity," and "public official" in California may invoke its fee-shifting apparatus whenever they do not lose every claim in firearms litigation. These terms plainly encompass the local jurisdiction Defendants and their officials.

*Third,* the district court compounded these errors by ruling that joinder of claims against all Defendants was improper. This decision flouts core considerations guiding the exercise of discretion under Rule 20 to protect litigants' rights and promote judicial economy. Joinder is appropriate under Rule 20 because this case

3

raises only a question of law common to all Defendants: whether the Federal Constitution permits any Defendant to seek attorneys' fees under Section 1021.11.

*Fourth*, the district court likewise erroneously ruled that venue was improper as to the out-of-district Defendants. Because all are in-state residents, and some reside in the Southern District of California, they all may be sued there under 28 U.S.C. § 1391(b)(1).

In sum, the district court erred, and this Court must reverse the judgment below. But that does not put an end to the matter. Section 1021.11's lingering threat of enforcement inflicts irreparable harm on Plaintiffs every day it prevents them from challenging local firearms laws in California. This Court should exercise its discretion to reach the merits of Plaintiffs' challenge and enjoin these Defendants from enforcing Section 1021.11.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiffs' federal constitutional claims under 28 U.S.C. § 1331. Plaintiffs timely appealed on January 25, 2024, sixteen days after the clerk entered judgment. ER-004. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The district court's judgment of dismissal raises three questions: Whether the district court erred by (1) dismissing Plaintiffs' complaint for lack of standing; (2)

4

concluding that Plaintiffs' claims are not ripe for adjudication; and (3) holding that venue in the Southern District of California is improper as to the non-resident Defendants (County of Alameda, County of Ventura, County of Los Angeles, City of San Jose, and County of Santa Clara).

In addition, the Court should address the merits of Plaintiffs' constitutional challenge to California Code of Civil Procedure § 1021.11, which asks whether the law's fee-shifting provisions violate the First Amendment, the Supremacy Clause, the Equal Protection Clause, and the Due Process Clause.

## PERTINENT STATUTORY PROVISIONS

California Code of Civil Procedure § 1021.11 provides, in full:

(a) Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

(b) For purposes of this section, a party is considered a prevailing party if a court does either of the following:

(1) Dismisses any claim or cause of action brought by the party seeking the declaratory or injunctive relief described by subdivision (a), regardless of the reason for the dismissal.

(2) Enters judgment in favor of the party opposing the declaratory or injunctive relief described by subdivision (a), on any claim or cause of action.

(c) Regardless of whether a prevailing party sought to recover attorney's fees or costs in the underlying action, a prevailing party under this section may bring a civil action to recover attorney's fees and costs against a person,

5

including an entity, attorney, or law firm, that sought declaratory or injunctive relief described by subdivision (a) not later than the third anniversary of the date on which, as applicable:

> (1) The dismissal or judgment described by subdivision (b) becomes final upon the conclusion of appellate review.

> (2) The time for seeking appellate review expires.

(d) None of the following are a defense to an action brought under subdivision (c):

> (1) A prevailing party under this section failed to seek recovery of attorney's fees or costs in the underlying action.

> (2) The court in the underlying action declined to recognize or enforce the requirements of this section.

> (3) The court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion.

(e) Any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief as described in subdivision (a), shall not be deemed a prevailing party under this section or any other provision of this chapter.

## STATEMENT OF THE CASE

**I.     Section 1021.11 Creates A Discriminatory State-Law Fee-Shifting Regime Designed To Suppress Firearms Litigation And Insulate Firearms Regulations From Judicial Review.**

Senate Bill 1327, enacted as Code of Civil Procedure § 1021.11, is largely a carbon copy of Texas's SB 8, enacted in 2021 in the abortion context. *See Miller*, 646 F. Supp. 3d at 1222–23; *Whole Woman's Health v. Jackson*, 595 U.S. 30, 35–36 (2021) (summarizing SB 8's procedures). This case challenges Section 1021.11's radical effort to suppress firearms-related litigation by putting civil rights litigants

and their attorneys on the hook for the government's attorney's fees if a case results in anything short of victory on every claim alleged in a complaint. Section 1021.11 provides, in relevant part:

> Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

CAL. CODE CIV. PROC. § 1021.11(a).

Unlike any other ordinary "fee shifting" statute, Section 1021.11 says that a "prevailing party" *cannot be a plaintiff* who brings a case seeking declaratory or injunctive relief regarding a state or local firearm regulation. CAL. CODE CIV. PROC. § 1021.11(e). And it says that a government defendant in a firearms case, including a local-government defendant, will be treated as a "prevailing party" if the court either "[d]ismisses *any* claim or cause of action" in the case, "regardless of the reason for the dismissal," or "[e]nters judgment in favor of the [government] party" "on any claim or cause of action." CAL. CODE CIV. PROC. § 1021.11(b) (emphasis added). In simple terms, then, Section 1021.11 would enable government defendants to recover fees if a firearms plaintiff loses *on any claim* in the case, while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case. This means, among other things, that a plaintiff could be liable for the government's fees even if the

7

plaintiff obtained all of the relief sought in the litigation—for example, if the plaintiff obtained declaratory and injunctive relief on a Second Amendment claim but the plaintiff's Equal Protection claim was dismissed as moot due to the Second Amendment victory.

Section 1021.11 further gives these inaptly named "prevailing party" government defendants a three-year window to bring a state law action to recover their fees, notwithstanding that the vast majority of firearms litigation is brought under 42 U.S.C. § 1983, and federal law already provides for the treatment of attorney's fees in those cases pursuant to 42 U.S.C. § 1988(b). CAL. CODE CIV. PROC. § 1021.11(c).

## II.     Section 1021.11 Violates Several Constitutional Provisions.

Due to the unique political circumstances in which it was enacted—namely, targeting firearms litigation to protest Texas's targeting of abortion litigation—Section 1021.11's unconstitutionality has never been in question. Indeed, the Attorney General's office rightly refused to defend the law's constitutionality in *Miller,* 646 F. Supp. 3d at 1222 n.1, because it had argued to the United States Supreme Cout in an amicus brief that the nearly identical Texas statute was unconstitutional. Br. of Mass. et al. as *Amici Curiae* in Supp. of Pet'rs at 21, *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) (highlighting SB 8's "one-sided attorney's fees provisions that award attorney's fees and costs to any plaintiff who

prevails [in exercising the law's private enforcement mechanism] while statutorily *barring* [abortion] providers from recovering their attorney's fees and costs even if they prevail" (internal citation omitted)).

After the Attorney General declined to defend the law, Governor Newsom intervened because he believed that "the legal viability of this fully enacted statute must be fully litigated and decided by the courts." *Miller v. Bonta*, No. 3:22-cv-01446, Newsom Intervention Br. at 1, Doc. No. 31-1 (Dec. 9, 2022). Newsom's submission made clear that he was no great champion of the statute, but rather that "he had been a critic of the Texas abortion statute" on which it was modeled, and sought simply to ensure that Section 1021.11 would be "litigated on an equal basis as the parallel Texas law." *Id.* at 2; *see also Miller,* 646 F. Supp. 3d at 1222–24; *see id.* at 1222 n.3 (quoting Governor's merits brief stating that "the Governor and others have previously expressed doubts about the constitutionality of the nearly identical fee-shifting provision of Texas's S.B. 8"). And when he lost, not only did the Governor choose not to appeal, he celebrated the loss by "thank[ing] Judge Benitez" for "confirm[ing]" that the fee-shifting laws are unconstitutional. In other words, the *Miller* decision vindicated the Governor's critiques of the Texas law. Office of Governor Gavin Newsom, Press Release, *Governor Newsom Issues Statement After Court Strikes Down Provision of Gun Safety Law* (Dec. 19, 2022).

In *Miller*, the Southern District of California held that Section 1021.11 violates the First Amendment, the Supremacy Clause, the Equal Protection Clause, and the Due Process Clause. The *Miller* court's reasoning is discussed further below. But the crux is as follows: "The principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws impinging on federal constitutional rights." *Miller*, 646 F. Supp. 3d at 1224. After holding Section 1021.11 unconstitutional, the district court entered a permanent injunction "enjoining the Governor and Attorney General," along with "their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them," from implementing or enforcing Section 1021.11.[1] *Id.* at 1232.

### III. Section 1021.11's Fee-Shifting Regime Has Caused Plaintiffs To Self-Censor: Plaintiffs And Their Counsel Have Been Deterred From Asserting Challenges To Defendants' Firearms Regulations.

After the *Miller* ruling, Plaintiffs Firearms Policy Coalition ("FPC") and California Gun Rights Foundation ("CGF") notified each Defendant here that they intended to pursue claims against enforcement of one or more local firearms regulations. Because each Defendant would have authority under Section 1021.11 to seek fees if any claim in any of those lawsuits was unsuccessful, Plaintiffs asked

---

[1] The same judge issued an identical injunction in a companion case. *S. Bay Rod & Gun Club, Inc. v. Bonta*, 646 F. Supp. 3d 1232, 1245 (S.D. Cal. 2022).

Defendants to stipulate that they would not enforce Section 1021.11. Each Defendant refused, either affirmatively or by declining to respond. ER-136–140, 144–181 (complaint and supporting evidence); *see also* Dist. Ct. Dkt. 20-1, Prelim. Inj. Br., 5:18–8:12.

Two examples from Defendants' responses are worth highlighting. When refusing to stipulate to non-enforcement, Alameda County Counsel "encouraged" Plaintiffs' counsel to "be mindful of your [ethical] duties [and] obligations before you make averments in any pleading regarding the intentions of the Sheriff and the County" regarding Section 1021.11. ER-159. Counsel for San Jose "decline[d] to comment on what positions the City might take, or what remedies it might seek, in hypothetical future litigation against the City." ER-176–177. There was nothing "hypothetical" about FPC's plan. FPC had previously sued over San Jose's novel requirement that firearm owners pay an annual fee to a City-designated non-profit organization and obtain firearm-related insurance in April 2022, but dismissed the case four months later after Section 1021.11's enactment. *Glass v. City of San Jose*, No. 5:22-cv-2533 (N.D. Cal.). FPC advised that it would refile the same case if San Jose were ready to disavow enforcement after *Miller*, but San Jose demurred. ER 138–139, 172.

## IV.   Procedural History.

On March 2, 2023, Plaintiffs filed this lawsuit seeking declaratory and injunctive relief preventing Defendants from relying on Section 1021.11 in firearms litigation against them. The Defendants are the City of San Diego, the County of Imperial, the County of Alameda, the County of Ventura, the County of Los Angeles, the City of San Jose, and the County of Santa Clara. Twelve days later, on March 14, 2023, the district court issued an Order to Show Cause directing Plaintiffs to explain why the case should not be dismissed for lack of standing, ripeness, improper venue, and joinder. Dist. Ct. Dkt. 18.

On March 28, 2023, Plaintiffs filed their response to the Order to Show Cause, Dist. Ct. Dkt. 19, and filed a Motion for Preliminary Injunction Or, Alternatively, For Summary Judgment, Dist. Ct. Dkt. 20–20-8. On April 11, 2023, Defendants filed their responses to the Order to Show Cause. ER-034–041, ER-042–056. Plaintiffs filed their reply on April 25. Dist. Ct. Dkt. 46. More than eight months after the Order to Show Cause was fully briefed, on January 9, 2024, the district court issued an order dismissing Plaintiffs' complaint, ER-005–013, along with a judgment of dismissal, ER-004.

After appealing, Plaintiffs sought an injunction pending appeal in the district court and requested an order shortening time on the motion. Dist. Ct. Dkt. 61, 62. Before filing the motion for injunction pending appeal, Plaintiffs asked Defendants'

counsel to state whether they would "oppose the motion or if they instead are now willing to disavow enforcement of Section 1021.11 (after obtaining a dismissal based on the representation that there was 'no legitimate risk' of its enforcement) and thereby obviate the need for further litigation." ER-022, 030. The request to meet and confer was met with silence. ER-022. Furthermore, when seeking the motion for an injunction pending appeal in the district court, Plaintiffs presented evidence that Section 1021.11 continued to prevent them from exercising their First Amendment rights to assert Second Amendment and other claims. While this case has been pending, Plaintiff FPC has been contacted by additional individuals who would like to bring other claims against Defendants and other local jurisdictions not bound by *Miller*, but FPC has continued to refrain from pursuing litigation because of Section 1021.11. ER-018–019, 022–023, 028.

The district court denied Plaintiffs' request for shortened time. ER-014–016. That motion remains pending. Plaintiffs then sought an injunction pending appeal from this Court and requested that the appeal be expedited. ECF No. 14.1. Defendants opposed that motion, ECF No. 18.1, and Plaintiffs filed a reply, ECF No. 21.1. That motion remains pending as of this filing.

## SUMMARY OF THE ARGUMENT

Plaintiffs are ready, willing, and able to bring Second Amendment and other claims against each of the local jurisdiction Defendants in this case, but Section

1021.11 effectively prevents them from doing so by subjecting them and their attorneys to the potential of ruinous fee liability. Because the Defendants here are not bound by *Miller*'s injunction, they retain full authority to invoke Section 1021.11 against Plaintiffs and their lawyers if they do not prevail on each of their claims. Before this litigation, Defendants refused to stipulate to non-enforcement of Section 1021.11 in the cases Plaintiffs would file against them. And Defendants conspicuously refused to disavow enforcement of the law in responding to the district court's Order to Show Cause, just as they did in post-judgment briefing below and in motion practice before this Court.

The district court allowed Defendants to continue having the best of both worlds by dismissing this case for lack of standing, while leaving Plaintiffs in the same state they were in before the case—unable to bring the underlying cases because of the threat of ruinous fee liability posed by the fee-shifting statute. Because this threat is so pernicious to individuals and organizations (and their attorneys) unable to bear the financial risk, Section 1021.11's deterrent effect prevails, and Defendants remain happily shielded from firearms litigation by a law that no one in this litigation has claimed is constitutional.

The district court's dismissal order was wrong and perpetuates Plaintiffs' injuries by leaving them in this state of limbo. *First*, the court failed to apply the correct legal standard. Plaintiffs did not need to present "concrete evidence that

14

Defendants plan to enforce Section 1021.11," as the court below suggested. ER-010. Rather, Plaintiffs simply needed to allege that Defendants have not *affirmatively disavowed* any intention to enforce Section 1021.11. Plaintiffs made that allegation, and indeed no one disputes it.

This was an ample showing, since courts generally *presume* that defendants will enforce newly enacted statutes like Section 1021.11. Indeed, courts consistently permit pre-enforcement challenges when the government, as here, refuses to disavow enforcement of an allegedly unconstitutional statute. *See, e.g.*, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979); *Bland v. Fessler*, 88 F.3d 729, 737 n.12 (9th Cir. 1996).

*Second*, the district court concluded that Plaintiffs lack standing because *Miller* has already enjoined "the proper defendants who have a direct connection with [Section 1021.11's] enforcement," since "in an action where a plaintiff challenges the constitutionality of a state statute, the proper defendant is the state official designated to enforce the rule." ER-008. This is contrary to black-letter law. When assessing whether a person is an appropriate defendant in a challenge to a state law, it does not matter where in the government the defendant is located. Rather, what matters is whether the official "possess[s] authority to enforce a challenged state law." *Whole Women's Health*, 595 U.S. at 46. The local government Defendants are distinct legal entities that have independent enforcement authority

15

under Section 1021.11: the statute confirms on its face that each Defendant here can seek fees if Plaintiffs do not win every single claim in the lawsuits they intend to file. CAL. CODE CIV. PROC. § 1021.11(a) (fee-shifting apparatus applies to every "political subdivision," "government entity" and "public official" in California). To be sure, the Governor and Attorney General *also* have authority to enforce Section 1021.11. And they are enjoined from doing so. But the *Miller* injunction does not name the Defendants in this case and thus it cannot legally bind them. Indeed, the *Miller* court could not have enjoined the Defendants in this case. "[N]o court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." *Whole Women's Health*, 595 U.S. at 44 (cleaned up). Rather, "a court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011); *see also Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (no authority to enjoin non-parties, even when they enforce the law and the named Defendant did not). And if Plaintiffs are to challenge Defendants' laws and policies restricting firearms, Plaintiffs must sue Defendants, because they are the ones who enforce their own laws and policies. And if Plaintiffs lost *any* claim in any such suit, they would be subject to enforcement of Section 1021.11 by Defendants, and the *Miller* injunction against state officials would do them no good.

16

Plaintiffs' active and ongoing constitutional injury creates a ripe claim. When this suit was filed, Plaintiffs had already suffered a cognizable injury: they were forced to dismiss or refrain from bringing constitutional challenges to Defendants' firearm regulations because Defendants had not agreed to refrain from enforcing Section 1021.11. The fact that plaintiffs have "suffered actual harm dispenses with any ripeness concerns." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1007 n.6 (9th Cir. 2003) ("ARLPAC").

Furthermore, all Defendants are properly joined and the Southern District of California is an appropriate venue. Joinder is appropriate under Rule 20 because this case raises only a question of law, and that question is common to all Defendants: whether the Federal Constitution permits any Defendant to seek attorneys' fees from any Plaintiffs or Plaintiffs' attorneys under Section 1021.11. The district court's dismissal runs counter to core considerations guiding the exercise of discretion under Rule 20 to protect litigants' rights and promote judicial economy, particularly in civil-rights cases like this one. And venue is proper in the Southern District in the first instance because the City of San Diego and the County of Imperial both reside there, and the remaining Defendant jurisdictions all reside in California. *See* 28 U.S.C. § 1391(b)(1).

The judgment must be reversed because the district court erred in each of its holdings. But the Court should go further. Section 1021.11's lingering threat of

enforcement inflicts irreparable harm by preventing Plaintiffs from exercising their constitutional rights to assert claims against firearms restrictions in court. In these circumstances, remand on Plaintiffs' constitutional challenge is unnecessary and the delay caused by further litigation would result in additional injustice to Plaintiffs. *See Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of HHS*, 946 F.3d 1100, 1110 (9th Cir. 2020) ("Planned Parenthood"). This Court should exercise its discretion to reach the merits and order Section 1021.11 enjoined as to Defendants for the same reasons it was enjoined as to the state officials in *Miller*: It violates the First Amendment, is preempted by the Supremacy Clause, and violates the Equal Protection and Due Process Clauses. Only then will Plaintiffs be able to pursue their claims in court free from Section 1021.11's looming shadow.

## LEGAL STANDARD

This Court reviews a district court's dismissal for lack of standing de novo. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487–88 (9th Cir. 2024). Because the dismissal arises at the pleading stage, this Court "assume[s] all [Plaintiffs'] allegations to be true and draw[s] all reasonable inferences in [their] favor." *Iten v. Los Angeles*, 81 F.4th 979, 983–84 (9th Cir. 2023).

As to the merits of Plaintiffs' challenge to Section 1021.11, the Court reviews such constitutional issues de novo. *See, e.g.*, *Neal v. Shimoda*, 131 F.3d 818, 823 (9th Cir. 1997); *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 648 (9th Cir. 2006).

## ARGUMENT

**I.    The District Court Erred In Dismissing The Case.**

**A.    Plaintiffs Have Pre-Enforcement Standing Because Their Proposed Conduct Falls Within Section 1021.11, And Defendants Have Not Disavowed Their Right To Enforce The Statute.**

As Plaintiffs detailed in their complaint, but for Section 1021.11's fee-shifting provisions, Plaintiffs would forthwith engage in firearms litigation against Defendants, but they have refrained from bringing these suits due to the law's threat of ruinous fee liability. ER-122–181 (complaint and supporting evidence). Plaintiffs never would have brought this case if Defendants had simply disavowed intention of enforcing Section 1021.11 in the event Plaintiffs did not win every single claim in their cases. Defendants refused to do so, thereby holding the obvious prospect of enforcing the onerous statue over Plaintiffs' heads, which, in turn, has resulted in the unconstitutional deterrence of Plaintiffs' constitutional rights.

Despite this, the district court held that Plaintiffs have not shown an "actual or imminent injury" based on its conclusion that they provided "no concrete evidence that Defendants plan to enforce Section 1021.11." ER-010. To start with, this conflicts with the standard governing standing at the pleading stage, where Plaintiffs' allegations of harm must be "taken as true" by the Court and "construed in the light most favorable" to Plaintiffs. *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995); *see also, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

(1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to establish standing], for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (citation omitted)).

And in any event, Plaintiffs did not even bear the burden of *alleging* a "concrete . . . plan to enforce" the statute. To the contrary, the district court ignored the *presumption* that Defendants *will* enforce the statute if Plaintiffs file the intended lawsuits and fail to prevail on every claim. *See Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("Courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'" (citation omitted)); *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021) ("[L]aws that are 'recent and not moribund' typically do present a credible threat [of enforcement]. This is because a court presumes that a legislature enacts a statute with the intent that it be enforced." (citations omitted)). Particularly for "recently enacted" statutes, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996). Put simply, "[w]here a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Tweed-New Haven*

20

*Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (internal quotation marks and citation omitted).

Thus, pre-enforcement challenges to statutes are justiciable when, as here, the government retains the *option* of enforcing an allegedly unconstitutional statute and has not disavowed it. In *Babbitt v. United Farm Workers Nat'l Union*, the Supreme Court rejected the argument, similar to Defendants' here, that a pre-enforcement challenge was not justiciable because the statute "has not yet been applied and may never be applied." 442 U.S. at 302. On the contrary, where a government actor with authority to enforce the statute "has not disavowed any intention of invoking" the law, the plaintiff's "fear" of prosecution under the "allegedly unconstitutional statute is not imaginary or wholly speculative," and they have standing to enjoin its enforcement. *Id*.

This Court agrees. In *Bland v. Fessler*, a plaintiff had pre-enforcement standing to challenge a law imposing civil penalties for making automated phone calls. Plaintiff self-censored by no longer making such calls in light of the "cloud" imposed by the prospect of facing penalties. 88 F.3d at 737. When the Attorney General stressed that its office had never enforced the statute, the court responded that the Attorney General had also "not stated affirmatively that his office will *not* enforce the civil statute." *Id*. (emphasis added). And this Court went on to reject the government's effort—similar to Defendants' effort here—to defeat standing with

21

lesser assurances: "It is true that [a senior member of the Attorney General's office] declared that the Attorney General's office 'has not brought or indicated that it would bring any action' under the civil statute. However, *this is far short of a disavowal of enforcement*. There is little comfort in these words for" a plaintiff facing potential enforcement. *Id*. at 737 n.12 (emphasis added). *See also, e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (allowing pre-enforcement challenge and noting "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Brown v. Kemp*, 86 F.4th 745, 769 (7th Cir. 2023) (holding that plaintiffs had a "credible fear" of enforcement where there was not "a clear or widespread disavowal [from the government] that would remove the threat of liability for plaintiffs"); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) (finding that plaintiffs had pre-enforcement standing based on self-censorship when government enforcers "have not denied that" plaintiffs' conduct fell within a statute's reach); *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) ("Of course, the government's disavowal must be more than a mere litigation position.").[2]

---

[2] "Disavowal of [a] statute requires that the state do more than say during the litigation that it might never prosecute plaintiff, [citation], or that it does not intend to prosecute plaintiff, [citation]. In order to disavow the statute, the state must instead take some affirmative step against enforcement." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 906 (E.D. Wis. 2002).

The district court's dismissal defies these principles. Indeed, the order asserts that Plaintiffs' reliance on such principles "effectively puts the burden on Defendants to establish that there is no standing." ER-009:5–6. Plaintiffs always bear the burden of showing standing, and Plaintiffs made the necessary showing here. The cases outlined above demonstrate that Defendants can *rebut* Plaintiffs' showing with "compelling contrary evidence" of a threat of enforcement—such as an express disavowal of any intention to enforce the statute.

That did not happen here. At every turn, Defendants have consistently refused to disavow their enforcement of the law. Defendants' oblique statements following the district court's Order to Show Cause conspicuously stopped short of closing the door on enforcing the statute in the future. *See, e.g.*, County of Imperial OSC Response, ER-036–039 (arguing that Plaintiffs lacked standing "because Defendants have never signaled any intent to enforce or apply the state statute," and that "there is no legitimate risk that any entity would seek to invoke Section 1021.11"); County of Alameda OSC Response, ER-049–050 (arguing that the *Miller* injunction "effectively discourages anyone . . . from even attempting to invoke Section 1021.11"). Before filing a motion for injunction pending appeal in the district court, Plaintiffs asked Defendants' counsel to state whether they would "oppose the motion or if they instead are now willing to disavow enforcement of Section 1021.11 (after obtaining a dismissal based on the representation that there was 'no legitimate risk'

23

of its enforcement) and thereby obviate the need for further litigation." ER-022, 030. This request was met with silence. ER-022. And when opposing Plaintiffs' motion for injunctive relief in this Court Defendants again failed to disavow enforcement. ECF No. 18.1 at 15–16 (stating that Defendants have an "utter lack of expressed interest" in enforcing Section 1021.11, that *Miller* injunction "makes it exceedingly unlikely" that they would rely on the statute, and they "have expressed no desire to" use it).

Defendants' responses to Plaintiffs' non-enforcement requests, their response briefing regarding the Order to Show Cause, their post-dismissal silence, and their statements to this Court all demonstrate a *refusal* to disavow any intent to enforce Section 1021.11, so Plaintiffs' showing is unrebutted under *Babbitt*, *Bland*, and the many cases requiring a disavowal. As it stands now, Defendants have retained the option of enforcing the law, and Defendants are content to continue taking advantage of the statute's chilling effect to shield them from litigation. This is sufficient pre-enforcement injury to establish Plaintiffs' standing.

**B.** **The Trial Court Ignored Defendants' Independent Enforcement Authority Under Section 1021.11.**

The district court also observed that, "in an action where a plaintiff challenges the constitutionality of a state statute, the proper defendant is the state official designated to enforce the rule." ER-008. Since *Miller* has already enjoined "the proper defendants who have a direct connection with [Section 1021.11's]

enforcement," the court reasoned, Plaintiffs have no standing. ER-008–009. This was error.

First, Section 1021.11 expressly grants Defendants independent enforcement authority and discretion to seek fees in firearms litigation brought against their jurisdictions. CAL. CODE CIV. PROC. § 1021.11(a) (fee-shifting apparatus applies to every "political subdivision," "government entity" and "public official" in California). Indeed, no Defendant has ever disputed that they possess the authority to enforce Section 1021.11 in the lawsuits that Plaintiffs wish to file.

Moreover, there is no plausible argument that the Defendants here are bound by the *Miller* injunction. "A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith*, 564 U.S. at 312. But these Defendants were not parties to *Miller*, and they are in no way under the supervision or control of the entities who were parties in *Miller*. As such, the *Miller* injunction does not run against them. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Howard L., P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016) ("An injunction binds a non-party only if it has actual notice, and either 'abet[s] the [enjoined party]' in violating the injunction, or is 'legally identified' with the enjoined party." (citations omitted)); *Whole Woman's Health*, 595 U.S. at 43–44 (injunction against Attorney General does not bind non-parties); *Jacobson*, 974 F.3d at 1255 (no authority to enjoin non-parties, even when they enforce the law and the named Defendant did not); *see generally*

25

Jonathan F. Mitchell, *The Writ of Erasure Fallacy*, 104 VA. L. REV. 933 (2018). Plaintiffs would have no reason to bring this case if Defendants were bound by the *Miller* injunction.

The district court cited *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1148 (D. Idaho 2014), for the proposition that, "in an action where a plaintiff challenges the constitutionality of a state statute, the proper defendant is the state official designated to enforce the rule," ER-008, but that discussion arose in the court's Eleventh Amendment analysis under *Ex Parte Young*, 209 U.S. 123 (1908), not its standing analysis. Thus, *Ex Parte Young*'s statement that a state defendant "must have some connection with the enforcement of the act" being challenged in order to avoid the Eleventh Amendment's bar on suing a state in federal court, 209 U.S. at 157, has nothing to do with this case. Here, in any event, the Defendants all have the closest possible "connection" to enforcing Section 1021.11: the statute gives them the right to do so.[3] The key points are (a) Defendants have authority to enforce *their policies and ordinances restricting firearms* (and therefore would be the proper defendants in a suit challenging them), and (b) Defendants would have the authority to seek to enforce Section 1021.11 after the

___

[3] The district court's citation to *ACLU v. Florida Bar,* 999 F.2d 1486 (11th Cir. 1993), ER-008, is similarly beside the point. The Florida Bar claimed it had no enforcement authority over the plaintiff in that case, and the court rejected the argument. *Id* at 1489. No one disputes that the Defendants here are "designated to enforce" Section 1021.11. *Id*.

26

failure of *any* claim in any case challenging one of their policies or ordinances restricting firearms.

### C. Plaintiffs Have Standing Under Foundational First Amendment Principles.

Even if Defendants' refusal to disavow enforcement were not sufficient to support standing in every case, it is sufficient here given the "'unique . . . considerations' in the First Amendment context [that] 'tilt dramatically toward a finding of standing'" in a pre-enforcement challenge. *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (citation omitted). *See also, e.g.*, *LSO, Ltd. v. Shroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). Bedrock First Amendment principles confirm that Plaintiffs have standing to sue to redress this constitutional injury. "[S]elf-censorship" is a sufficient Article III injury "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *see also, e.g.*, *Tingley*, 47 F.4th at 1067 ("We have held that a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." (internal quotation marks omitted)). In that light, Plaintiffs have suffered a clear First Amendment injury: they wish to engage in conduct protected by the First Amendment but within Section 1021.11's reach, and their constitutional rights to engage in that conduct have been chilled by the statute. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171–72 (9th Cir. 2018) (detailing standard for pre-enforcement challenge based on chilled First Amendment activity). In short, Plaintiffs have suffered injury by being

27

"forced to modify [their] speech and behavior to comply with" Section 1021.11. *ARLPAC*, 320 F.3d at 1006.

The district court's consideration of these principles was flawed. The court rejected Plaintiffs' reliance on this Court's opinion in *Lopez* by noting its statement of the rule that, despite the First Amendment's relaxed standing requirement, "plaintiffs must still show an actual or imminent injury to a legally protected interest." ER-009 (quoting *Lopez*, 630 F.3d at 785). But *Lopez*'s facts support Plaintiffs' standing here. In *Lopez*, a college student alleged that his religious speech about gay marriage during class would subject him to punishment under the school's sexual harassment policy. Unlike here, where there is no dispute a Second Amendment lawsuit against any of the Defendants would bring Plaintiffs within Section 1021.11, the *Lopez* Court noted that plaintiff "has not shown that the sexual harassment policy even arguably applies to his past or intended future speech." 630 F.3d. at 790. The Court then (1) discussed multiple cases stating the rule that defendants can defeat standing by disavowing an intention to enforce, *id*. at 788; (2) noted that the college *had* "disavowed" the one time a teacher admonished the student, *id*. at 784; and (3) observed that the official with enforcement power stated in writing that "no action will be taken against students for expressing their opinions" in the manner that plaintiff did. *Id*. at 791–92. Here, unlike in *Lopez*,

28

Defendants have pointedly refused to disavow enforcement power under the fee-shifting law.

*   *   *

In sum, Plaintiffs have standing to bring this challenge against Defendants.

### D. This Case Is Ripe.

Plaintiffs' active and ongoing constitutional injury creates a ripe claim. When this suit was filed, Plaintiffs had already suffered a cognizable injury: they were forced to dismiss and continue to refrain from bringing constitutional challenges to Defendants' firearm regulations because Defendants had not agreed to refrain from enforcing Section 1021.11. The fact that Plaintiffs have "suffered actual harm dispenses with any ripeness concerns." *ARLPAC*, 320 F.3d at 1007 n.6; *accord Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (observing that "in many cases, ripeness coincides squarely with standing's injury in fact prong").

### E. All Defendants Are Properly Joined In This Action And The Southern District Of California Is An Appropriate Venue.

Under Rule 20, defendants may be joined in an action if "any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). This case raises only a question of law, and that question is common to all Defendants: namely, whether

29

the Federal Constitution permits any Defendant to seek attorneys' fees from any Plaintiffs or Plaintiffs' attorneys under Section 1021.11. The district court's conclusion that Plaintiffs' claims arise out of "distinct transactions or occurrences" with each Defendant was error. ER-011–012. While it is true that Plaintiffs sent each Defendant a separate non-enforcement letter and each Defendant's response varied, the underlying legal claim against each Defendant is identical and there is no material factual distinction between them.

The district court's dismissal of the case flouts core considerations guiding the exercise of discretion under Rule 20 to protect litigants' rights and promote judicial economy. In civil-rights cases, like this one, "predicated on federal statutes and the United States Constitution," courts frequently "have relied upon Rule 20 to sustain the joinder of defendants." 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1657 (3d ed.) ("WRIGHT & MILLER"). After all, "[t]he purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits," goals that become only more imperative when fundamental rights are at stake, as they are here. *Id*. § 1652.

Thus, in *United States v. Mississippi*, the Supreme Court held that six county registrars, three of whom resided outside the district where the suit was initiated, were properly joined in the action because the complaint alleged "a state-wide

30

system designed to enforce the registration laws in a way that would inevitably deprive" minority citizens of their voting rights—even though the Court cited no allegations that the defendant registrars acted in concert with one another in any particular instance. 380 U.S. 128, 142 (1965). Similarly, in *Bryant v. California Brewers Association*, where the plaintiff challenged a collective-bargaining agreement for the State's brewery industry on the ground that it deprived him of valuable employment status based on his race, this Court held that breweries where the plaintiff had "neither worked nor sought to work" were properly joined merely because they were "signatories to the statewide collective bargaining agreement and, as such, support and maintain the disputed contract provisions." 585 F.2d 421, 425 (9th Cir. 1978), *vacated on other grounds*, 444 U.S. 598 (1980).

These cases illustrate the Supreme Court's observation that, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Simply put, Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *see also* WRIGHT & MILLER § 1653 ("The transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests.

31

They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy.").

Joinder is as appropriate here as it was in *Mississippi* and *Bryant*. The claims in this case involve fundamental constitutional rights and cry out for efficient resolution. As the cases above show, Rule 20's "flexible" provisions do not require a plaintiff to allege that all defendants acted in concert when rights are deprived systematically and state-wide. WRIGHT & MILLER § 1653. And the claims against all Defendants arise from a single law that is explicitly aimed at firearm owners and advocacy groups throughout the State. As a result, the claims against all Defendants will involve "overlapping proof," another widely accepted indication that they "arise out of the same transaction or occurrence." *Id*.

In short, there is no valid reason to impose the "delay, inconvenience, and added expense" of separate actions here. WRIGHT & MILLER § 1653. Plaintiffs will be prejudiced not only by the burden of litigating in multiple courts, but also by the delay that this piecemeal approach would cause to the full recognition of their rights. Defendants would be forced to independently address legal questions that they could just as easily, if not more efficiently, address together in a single action. And the courts in other districts will be forced to adjudicate legal questions that the Southern District of California has already resolved. Permissive joinder exists under Rule 20

precisely "to promote the expeditious determination of disputes, and to prevent multiple lawsuits." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 552 (9th Cir. 2015).

Finally, venue is proper in this District. Under 28 U.S.C. § 1391(b)(1), a "civil action may be brought in a judicial district in which *any defendant* resides, if all defendants are residents of the State in which the district is located" (emphasis added). Venue is proper in the first instance because the City of San Diego and the County of Imperial both reside here, and the remaining Defendants all reside in California.

If, however, this Court ultimately determines that partial severance is appropriate as to the out-of-district Defendants, the claims against the City of San Diego and Imperial County should nonetheless be permitted to proceed below.

## II. The Court Should Reach The Merits, Find Section 1021.11 Unconstitutional, And Direct The District Court To Enjoin Defendants From Enforcing The Statute.

There is no reason to return this case to the district court for further proceedings given Section 1021.11's patent unconstitutionality and the ongoing irreparable harm that the statute inflicts on Plaintiffs. Each of the equitable considerations guiding this Court's discretion to consider an issue in the first instance is present here: The "proper resolution is beyond any doubt," "injustice [will] otherwise result" to Plaintiffs, and the constitutional questions are "purely

33

legal." *Planned Parenthood*, 946 F.3d at 1110 (internal citations omitted). Any one of these grounds would be sufficient to warrant reaching the merits; this is the exceptional case where all considerations are present and point in the same direction. The additional considerations this Court highlighted in *Planned Parenthood* also amplify the need for relief: further delay works continued and severe harm on Plaintiffs (who have already been shut out of court for over a year), and Plaintiffs' constitutional challenge raises a significant question of law. *Id.* at 1110 (citing *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986), and *Guam v. Okada*, 694 F.2d 565, 570 n.8 (9th Cir. 1982)).

Promptly reaching the merits here is consistent with this Court's previous treatment of pure constitutional questions. *See*, *e.g.*, *Fitzgerald v. Cnty. of Orange*, 570 F. App'x 653, 656 (9th Cir. 2014) (reaching the merits of a First Amendment challenge after the district court dismissed case for lack of standing); *Pocatello Educ. Ass'n v. Heideman*, 504 F.3d 1053, 1060 & n.5 (9th Cir. 2007) (exercising discretion to consider First Amendment argument and determining a state statute to be unconstitutional); *Ariz. Cattle Growers' Ass'n v. U.S. Fish and Wildlife*, 273 F.3d 1229, 1241 (9th Cir. 2001) (observing that this Court "maintain[s] the discretion to review a purely legal issue, including the interpretation of a statute"). Plaintiffs have pressed their constitutional challenge at every opportunity, and Defendants have not once defended the fee-shifting law on the merits.

In short, the equities demand that the Court promptly reach the merits and resolve them in Plaintiffs' favor.

**A.    The Proper Resolution Of The Merits Is Beyond Doubt: Section 1021.11 Is Unconstitutional For The Reasons Stated In *Miller*.**

Plaintiffs' claims against Section 1021.11 succeed on the merits. Indeed, the reasons Section 1021.11 is unconstitutional illustrate the very harm that justifies this Court's consideration of the merits now: The law was designed to prevent firearms plaintiffs from exercising their First Amendment rights to challenge firearms regulations in court, and Plaintiffs' experience demonstrates that the plan to deter such litigation has worked. The *Miller* court found that Section 1021.11 violates the First Amendment, is preempted under the Supremacy Clause by 42 U.S.C. § 1988, and violates the Equal Protection and Due Process Clauses. For the same reasons, Defendants should be enjoined from enforcing Section 1021.11.

**1.    Section 1021.11's Fee-Shifting Regime Violates The First Amendment.**

As the Court observed in *Miller*, "[t]he principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws impinging on federal constitutional rights." 646 F. Supp. 3d at 1224. "Laws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable." *Id.* At 1225. And the threat posed by Section 1021.11 extends beyond imposing financial ruin on would-be plaintiffs: the law imposes the same threat of

35

fee liability on plaintiffs' attorneys and their law firms. The *Miller* Court recognized that this scheme "does a disservice to the courts" through suppressing "novel," "substantial" claims, thereby "threaten[ing] severe impairment of the judicial function" by "insulat[ing] the Government's laws from judicial inquiry." *Id.* at 1227 (citations omitted).

Section 1021.11 thus improperly threatens the First Amendment right to petition. For this right includes "[t]he right of access to the courts," which is "but one aspect of the right of petition." *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The *Miller* Court noted that Section 1021.11 struck at the core of this right. "In our ordered system of civil justice, the Second Amendment right, and for that matter all constitutional rights, are ultimately protected by the First Amendment right to identify unconstitutional infringements and seek relief from the courts." 646 F. Supp. 3d at 1224–25.

This is not the first time a state has erected and enforced regulatory barriers to avoid civil rights litigation. In *NAACP v. Button*, 371 U.S. 415 (1963), the Supreme Court struck down Virginia's ban on "improper solicitation" of legal business that Virginia used to target the NAACP's efforts to bring civil rights cases. *Id.* at 425–26. The *Button* Court highlighted the danger posed by regulations designed to impair citizens' ability to bring civil rights litigation: First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of

36

sanctions may deter their exercise almost as potently as the actual application of sanctions." *Id.* at 433. Where a "statute lends itself to selective enforcement against unpopular causes," "a statute broadly curtailing group activity leading to litigation may easily become a weapon of oppression . . . . Its mere existence could well freeze out of existence" the targeted civil litigation. *Id.* at 435–36.

The Court also recognized the role the First Amendment plays in securing access to the courts to preserve civil rights, particularly for groups unable to protect their rights through the political channels. "Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." 371 U.S. at 429–30. Such is the case here, where Plaintiffs seek to assert their constitutional rights in litigation against local governments that disfavor the fundamental right to keep and bear arms.

The Supreme Court similarly struck down South Carolina's efforts to punish the ACLU's counsel in *In re Primus*, 436 U.S. 412 (1978), where the state used a rule prohibiting solicitation of prospective litigants to target a lawyer who offered free representation to a woman who had been forcibly sterilized. *Id.* at 416–17. Relying on *Button*, the Court explained that where a state seeks "to regulate expressive and associational conduct at the core of the First Amendment's protective

ambit," the state "'may regulate in the area only with narrow specificity.'" *Id.* at 424

(quoting *Button*). As with the NAACP in *Button*, for the ACLU, "'litigation is not a

technique of resolving private differences'; it is 'a form of political expression' and

'political association.'" *Id.* at 428.

Since *Button*, the Supreme Court has consistently enjoined state action that

imposes barriers on litigation that may chill protected activity. *See, e.g., Bd. of R. R.*

*Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (a state cannot

"handicap[]" "[t]he right to petition the courts" through indirect regulation that

"infringe[s] in any way the right of individuals and the public to be fairly represented

in lawsuits authorized by Congress to effectuate a basic public interest"); *United*

*Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222–23

(1967) (the state cannot "erode [the First Amendment's] guarantees by indirect

restraints" on citizens' ability to assert their legal rights); *United Transp. Union v.*

*State Bar of Mich.*, 401 U.S. 576, 580–81, 585–86 (1971) (explaining that "the First

Amendment forbids . . . restraints" that effectively prevent groups from "unit[ing]

to assert their legal rights," and striking down economic regulation that denied union

members "meaningful access to the courts"). Because "[t]he Constitution does not

permit" the government to "insulate [its] interpretation of the Constitution from

judicial challenge," courts "must be vigilant when [the government] imposes rules

and conditions which in effect insulate its own laws from legitimate judicial

challenge." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001); *see Miller*, 646 F. Supp. 3d at 1226 (quoting *Velazquez*). Section 1021.11's obvious and impermissible purpose is to give state and local governments in California free reign to regulate firearms by suppressing litigation over firearm regulations, in violation of decades of First Amendment precedent.

Section 1021.11's fee-shifting regime further violates the First Amendment because it is content-based and viewpoint-discriminatory. Section 1021.11 imposes a unique burden on those who seek to vindicate their civil rights through firearms litigation while favoring all other sorts of constitutional and statutory civil rights claims, which are not subject to the same one-sided fee-shifting regime. Civil rights litigation is core protected speech. *See Button*, 436 U.S. at 431 (civil rights litigation is a "form of political expression"); *Primus*, 436 U.S. at 429; *Velazquez*, 531 U.S. at 545. Yet Section 1021.11 singles out speech over firearms restrictions for special unfavorable treatment. States are not permitted to advance their policy goals "through the indirect means of restraining certain speech by certain speakers," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011), and "may not burden the speech of others in order to tilt public debate in a preferred direction." *Id.* at 578–79.

In short, Section 1021.11's fee-shifting penalty violates the First Amendment.

### 2. Section 1021.11's Fee-Shifting Regime is Preempted by 42 U.S.C. § 1988.

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land." U.S. CONST. ART. VI, cl. 2. "Consistent with that command, [the Supreme Court has] long recognized that state laws that conflict with federal law are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citation omitted). To that end, "state law is naturally preempted to the extent of any conflict with a federal statute," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), and "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted); *see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause . . . any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.") (internal quotation marks and citation omitted).

Section 1021.11's attempt to shift the government's fees onto the shoulders of civil-rights plaintiffs conflicts with the text and structure of Section 1988, and it undermines Section 1988's purposes. Section 1988 provides that, in most categories of federal civil rights litigation, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of the case. 42 U.S.C. § 1988(b). "[A] prevailing *plaintiff* 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v.*

*Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted and emphasis added). By contrast, the Supreme Court has repeatedly held that, given the purposes of Section 1988, prevailing *defendants* may recover fees only "where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Id*. at 429 n.2; *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (under analogous fee award language in Title VII, establishing standard that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds "that his claim was frivolous, unreasonable, or groundless").

Section 1988 does not require a plaintiff to win every claim to be a "prevailing party." Relying on congressional guidance, the Supreme Court has "made clear that plaintiffs may receive fees under [Section] 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989) (Section 1988 fees are appropriate if a party has "prevailed on a significant issue in the litigation and have obtained some of the relief they sought"). Section 1021.11, however, says that only government defendants can be "prevailing parties." And because it also says a government defendant is a "prevailing party" if the plaintiff loses on any of its claims, the government would be entitled to fees even where it has been found to

41

violate the Constitution on other claims in the case. In other words, Section 1021.11 flips the script of Section 1988, putting government defendants in a better position than plaintiffs under Section 1988.

Section 1021.11 thus directly conflicts with Section 1988 by establishing a wholly separate state law fee regime. Indeed, Section 1021.11 elevates California's prerogatives over federal law. The statute remarkably asserts that its fee-shifting provision applies regardless of what any federal court does in an underlying Section 1983 case: Section 1021.11 pronounces that government officials may plow ahead with enforcing the fee-shifting penalty against a Section 1983 plaintiff with a state court collection action even when "*[t]he court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." CAL. CODE CIV. PROC. § 1021.11(d)(3) (emphasis added). Not only does "California's fee shifting provision turn[] [the federal] approach upside down," but "California attorney's fee-shifting construct goes beyond § 1988 by discouraging attorneys from representing civil rights plaintiffs." *Miller*, 646 F. Supp. 3d at 1229. And because Section 1021.11 "will have the effect of thwarting federal court orders enforcing Second Amendment and other rights through § 1988 attorney's fee awards," the statute "cannot survive." *Id.* at 1230.

Section 1021.11 also undermines the manifest purpose of Section 1988. Shortly after the Civil Rights Act's passage, the Supreme Court recognized the link between fee-shifting and effective enforcement of civil rights laws.

> When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. . . . If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief . . . .

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968). In short, "[t]he purpose of [Section] 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94–1558 at 1 (1976)).

In direct conflict with Section 1988's purpose, Section 1021.11 threatens to bankrupt any plaintiff considering a challenge to a state or local firearm regulation if the plaintiff does not achieve complete victory in the litigation. This is a strong *deterrent* to asserting civil rights claims, whereas Section 1988 expresses Congressional intent to *encourage* civil rights litigation.

Because Section 1021.11 "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress," and is directly contrary to federal law, California's law "must give way." *PLIVA, Inc.*, 564 U.S. 634, 617.

43

Section 1021.11's fee-shifting penalty is preempted and its application is unconstitutional under the Supremacy Clause.

### 3. Section 1021.11's Fee-Shifting Regime Violates The Equal Protection And Due Process Clauses.

A law also cannot baselessly discriminate the exercise of a constitutional right without violating the Equal Protection Clause. *See, e.g.*, *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In all the ways described above, Section 1021.11 discriminates against federal constitutional rights and on the basis of viewpoint by targeting plaintiffs who challenge firearms restrictions. As the district court held in *Miller*, therefore, Section 1021.11 also violates the Equal Protection Clause. Indeed, while such discrimination against those who seek to exercise First and Second Amendment rights would be subject to, and plainly fail, strict scrutiny, the classifications at issue here could not even survive rational basis scrutiny as explained above. "Where money determines not merely 'the kind of trial a man gets,' but whether he gets into court at all," the *Miller* Court explained, "the great principle of equal protection becomes a mockery." 646 F.Supp.3d at 1225 (citation omitted).

The *Miller* Court further explained that due process separately "requires that a citizen be able to be heard in court" and thus that, "[w]here the financial cost is too high to enable a person to access the courts," there is also a violation of the Due Process Clause. *Id*. at 1225. Simply put, "[l]aws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable." *Id*.

44

\*     \*     \*

In sum, Section 1021.11 is unconstitutional, and its lingering threat of enforcement is actively infringing on Plaintiffs' right to access the courts.

## B.    Plaintiffs Will Suffer Injustice From The Delay Of Remand.

This Court's prompt intervention is necessary to remedy Plaintiffs' irreparable harm. Plaintiffs are irreparably harmed because Section 1021.11 imposes a severe burden on their right of access to the courts and thereby deprives them of the opportunity to vindicate—or even attempt to vindicate—their Second Amendment rights. As the Supreme Court and this Court have repeatedly emphasized, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *accord Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam).

The constitutional violations manifested in Section 1021.11 continue to cause concrete harm to Plaintiffs. The cloud imposed by the law has caused Plaintiffs to dismiss or refrain from bringing lawsuits challenging Defendants' firearms regulations that they believe are unconstitutional. While this case has been pending, FPC has been contacted by additional individuals who have potential separate claims against Defendants firearm regulations, but Section 1021.11 prevents Plaintiffs from exercising their rights to challenge Defendants' firearm regulations in court. Remand

will cause injustice to Plaintiffs by perpetuating their constitutional injuries, and there is nothing to be gained from further proceedings below.

### C. Plaintiffs' Constitutional Challenge To Section 1021.11 Is Purely Legal.

This case raises only a question of law, and that question is common to all Defendants: whether the Federal Constitution permits any Defendant to seek attorneys' fees from any Plaintiffs or Plaintiffs' attorneys under Section 1021.11. Under these circumstances, there is no reason to remand. This Court "need not wait" to resolve Plaintiffs' constitutional challenge since it "could not possibly be affected by deference to [the] trial court's factfinding or fact application" and it would not benefit from the parties' "further development of the factual record." *Planned Parenthood*, 946 F.3d at 1111. In short, Plaintiffs' constitutional challenge to Section 1021.11 is amenable to decision in this appeal.

\* \* \*

As in *Planned Parenthood*, whether Section 1021.11 is "contrary to the law" is a "purely legal question[]," such that "there is good reason for [the Court] to settle" the question of the law's constitutionality now without the delay and expense of remand. 946 F.3d at 1112.

46

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment of dismissal, hold California Code of Civil Procedure § 1021.11's fee-shifting regime unconstitutional, and direct the district court to enter judgment in Plaintiffs' favor.

Respectfully submitted,

s/ Bradley A. Benbrook

| | |
|---|---|
| Bradley A. Benbrook | David H. Thompson |
| Stephen M. Duvernay | Peter A. Patterson |
| BENBROOK LAW GROUP, PC | Kate Hardiman |
| 701 University Ave., Ste. 106 | COOPER & KIRK, PLLC |
| Sacramento, CA 95825 | 1523 New Hampshire Ave., NW |
| | Washington, D.C. 20036 |

*Counsel for Plaintiffs-Appellants*

## STATEMENT OF RELATED CASES

To the best of our knowledge, there are no related cases.

Dated: March 11, 2024

s/Bradley A. Benbrook_
Bradley A. Benbrook

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because this brief contains 10,682 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

Dated: March 11, 2024

s/Bradley A. Benbrook
Bradley A. Benbrook

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Bradley A. Benbrook___
Bradley A. Benbrook