Docket No. 24-472

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

FIREARMS POLICY COALITION, INC. et al.
Plaintiffs-Appellants,

vs.

CITY OF SAN DIEGO et al.
Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of California
Case No. 3:23-cv-00400-LL-VET

---

## DEFENDANTS-APPELLEES' JOINT ANSWERING BRIEF

---

Matthew D. Zinn
Ryan K. Gallagher
Shute, Mihaly & Weinberger LLP
396 Hayes Street
San Francisco, California 94102
Telephone: (415) 552-7272
Facsimile: (415) 552-5816

Attorneys for Defendants-Appellees County of Alameda and
County of Santa Clara

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... 3

INTRODUCTION ...................................................................................... 7

ISSUES PRESENTED ............................................................................ 10

JURISDICTIONAL STATEMENT .......................................................... 10

STATEMENT OF THE CASE ................................................................. 10

    A.   Factual Background ...................................................... 10

    B.   Procedural History ....................................................... 13

STANDARD OF REVIEW ....................................................................... 17

SUMMARY OF THE ARGUMENT ......................................................... 17

ARGUMENT .......................................................................................... 20

    I.   Plaintiffs lack Article III standing for multiple reasons ...... 20

        A.   Plaintiffs have not experienced any pre-
enforcement injury that would confer standing. ......... 21

        B.   Plaintiffs also lack standing because Defendants
are not responsible for their purported injuries .......... 28

    II.   The district court correctly held, in the alternative,
that the claims against the non-resident Defendants
should be dismissed on procedural grounds. ........................ 30

        A.   The seven local government Defendants are not
properly joined in this single action. ........................... 31

        B.   Venue is improper as to the non-resident
Defendants. ................................................................. 38

    III.   This Court should not reach the merits of Plaintiffs'
challenges to Section 1021.11. ............................................. 39

CONCLUSION ....................................................................................... 40

CERTIFICATE OF COMPLIANCE ........................................................ 41

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

U.S. Const. art. III .............................................................. passim

## FEDERAL CASES

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ........................................................ 23

*Bland v. Fessler,*
    88 F.3d 729 (9th Cir. 1996) ........................................... 24

*Brown v. Kemp,*
    86 F.4th 745 (7th Cir. 2023) .......................................... 24

*Bryant v. Cal. Brewers Ass'n,*
    585 F.2d 421 (9th Cir. 1978) .................................... 35, 36

*Bryant v. Woodall,*
    1 F.4th 280 (4th Cir. 2021) ....................................... 23, 24

*Cal. Brewers Ass'n v. Bryant,*
    444 U.S. 598 (1980) ........................................................ 35

*Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cty. Sheriff's Dep't,*
    No. 2:23-cv-10169 SPG (ADSx) (C.D. Cal. Dec. 4, 2023) ............... 28

*Cayuga Nation v. Tanner,*
    824 F.3d 321 (2d Cir. 2016) ........................................... 23

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................ 27

*Coleman v. Quaker Oats Co.,*
    232 F.3d 1271 (9th Cir. 2000) ....................................... 17

*Ctr. for Individual Freedom v. Madigan*,
  697 F.3d 464 (7th Cir. 2012) ........................................................ 24

*Desert Empire Bank v. Ins. Co. of N. Am.*,
  623 F.2d 1371 (9th Cir. 1980) ............................................ 32, 35, 37

*Doe v. Bolton*,
  410 U.S. 179 (1973) ..................................................................... 25

*U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*,
  8 F. Supp. 3d 339 (S.D.N.Y. 2014) ................................................ 39

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
  596 F. Supp. 2d 1282 (D. Ariz. 2009) ...................................... 32, 39

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*,
  816 F.3d 1241 (9th Cir. 2016) ...................................................... 17

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ......................................................................... 24

*Laird v. Tatum*,
  408 U.S. 1 (1972) ......................................................................... 27

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ............................................... passim

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................... 21, 28

*McDougall v. County of Ventura*,
  No. 2:20-cv-02927 CBM (ASx) (C.D. Cal. July 31, 2023) .............. 28

*Miller v. Bonta*,
  646 F. Supp. 3d 1218 (S.D. Cal. 2022) ................................. passim

*N.H. Right to Life Political Action Comm. v. Gardner*,
  99 F.3d 8 (1st Cir. 1996) .............................................................. 23

4

*Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*,
No. 22-cv-00501-BLF, 2023 WL 5209730 (N.D. Cal. July 28, 2023) ........................................................................................ 27

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) ......................................................... 17

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) ................................... 18, 19, 29, 30

*Orr v. Plumb*,
884 F.3d 923 (9th Cir. 2018) ......................................................... 38

*Rush v. Sports Chalet, Inc.*,
779 F.3d 973 (9th Cir. 2015) ............................................. 19, 31, 34

*S. Bay Rod & Gun Club, Inc. v. Bonta*,
646 F. Supp. 3d 1232 (S.D. Cal. 2022) ......................... 11, 15, 22, 25

*Singleton v. Wulff*,
428 U.S. 106 (1976) ................................................................ 39, 40

*Spaeth v. Mich. State Univ. Coll. of Law*,
845 F. Supp. 2d 48 (D.D.C. 2012) ...................................... 32, 33, 34

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ............................................. 7, 20, 27

*Tweed-New Haven Airport Auth. v. Tong*,
930 F.3d 65 (2d Cir. 2019) ............................................................ 23

*United States v. Mississippi*,
380 U.S. 128 (1965) ...................................................................... 36

*Wynn v. Nat'l Broad. Co., Inc.*,
234 F. Supp. 2d 1067 (C.D. Cal. 2002) .................................. passim

**FEDERAL STATUTES**

28 U.S.C. § 1291 ......................................................................10

28 U.S.C. § 1391 ......................................................................38

28 U.S.C. § 1406 ......................................................................39

**CALIFORNIA CONSTITUTION**

Cal. Const. art. XI, § 7...........................................................33

**STATE STATUTES**

Cal. Code Civ. P. § 1021.11 ............................................ passim

**RULES**

Fed. R. Civ. P. 20....................................................... passim

Fed. R. Civ. P. 21....................................................... 16, 19, 31, 38

**TREATISES**

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice &
      Procedure* § 1683 (3d ed. 2022) .......................................31

## INTRODUCTION

"This is a case in search of a controversy."[1]

In 2021, the California State Legislature enacted California Code of Civil Procedure section 1021.11 ("Section 1021.11"), which aimed to deter legal challenges to firearm regulations by forcing plaintiffs to pay the government's attorneys' fees. Before it could even take effect, a federal district court declared Section 1021.11 unconstitutional and permanently enjoined all State officials from ever attempting to enforce it. Those decisions became final when the State declined to appeal. The story should have ended there.

Instead, Plaintiffs opted to sue a handpicked group of seven cities and counties scattered throughout the state in a single lawsuit in the Southern District of California: the cities of San Diego and San Jose and the counties of Alameda, Imperial, Los Angeles, Santa Clara, and Ventura. (All Defendants join in this Answering Brief.) Plaintiffs' alleged concern is that these Defendants—like *every other* local government in California—could still theoretically invoke Section 1021.11 in some

---

[1] *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 2000).

hypothetical future suit that Plaintiffs or their counsel may one day choose to bring against Defendants.

The district court sensibly and summarily rejected this misdirected suit. Defendants have had nothing to do with Section 1021.11. They did not advocate for or participate in the Legislature's adoption of it. They have never tried to enforce it. And they have never suggested that they would do so in the future. In fact, the *only* connection Defendants have had with Section 1021.11 is that each received a letter from Plaintiffs demanding that they enter into a formal stipulation—within days, and on Plaintiffs' terms—disavowing any future attempts to enforce Section 1021.11.

The district court recognized that there is no genuine case or controversy here and dismissed Plaintiffs' action for lack of subject matter jurisdiction. Plaintiffs lack Article III standing and their claims are not ripe because there is no real risk that Defendants will ever attempt to enforce Section 1021.11 against them—or anyone else. To the extent that Plaintiffs are refraining from speaking out of concern for speculative enforcement of Section 1021.11, it is an injury entirely of their own making. Such self-inflicted harms do not confer pre-enforcement standing. And

8

even if Plaintiffs *have* suffered some injury, they still would lack standing because California state officials—not these local government Defendants—would be the responsible parties.

But a lack of subject matter jurisdiction is not the only fatal defect in Plaintiffs' case. The district court concluded in the alternative that all seven Defendants were improperly joined in this single action because they had nothing relevant in common. And, because of this misjoinder, the Southern District of California is an improper venue for the five Defendants that do not reside there.[2] The district court acted well within its broad discretion in holding that these joinder and venue issues independently require dismissal of all claims against the non-resident Defendants.

This Court should affirm because Plaintiffs' action is not justiciable. Alternatively, it should affirm based on the district court's holding that the claims against all Defendants must be severed and the claims involving the non-resident Defendants must be dismissed without prejudice.

---

[2] These five "non-resident Defendants" are the City of San Jose and the counties of Alameda, Los Angeles, Santa Clara, and Ventura.

## ISSUES PRESENTED

1.      Do Plaintiffs have Article III standing?

2.      Did the district court abuse its discretion in concluding, in the alternative, that all Defendants have been misjoined in this single action, that venue is lacking as to the non-resident Defendants, and that these procedural issues would independently require dismissal of all claims against the non-resident Defendants?

## JURISDICTIONAL STATEMENT

Defendants agree that this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court and this Court lack subject matter jurisdiction as explained by the district court and in this brief.

## STATEMENT OF THE CASE

### A.    Factual Background

Plaintiffs' claims relate to a statute adopted by the California State Legislature, Section 1021.11. As relevant here, Section 1021.11 provides a mechanism for shifting attorneys' fees and costs to prevailing defendants in any case where a plaintiff seeks to prevent the State or a local government from enforcing a regulation on firearms. *See* Cal. Civ. Proc. Code § 1021.11; ER-006. Section 1021.11 became effective on January 1, 2023. Cal. Civ. Proc. Code § 1021.11.

In December 2022, a judge of the U.S. District Court for the Southern District of California declared Section 1021.11 unconstitutional and permanently enjoined any California state official "from bringing any action or motion under § 1021.11 to obtain an award of attorney's fees and costs." *Miller v. Bonta*, 646 F. Supp. 3d 1218, 1232 (S.D. Cal. 2022) (enjoining Attorney General, Governor, "and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them"); *S. Bay Rod & Gun Club, Inc. v. Bonta*, 646 F. Supp. 3d 1232, 1245 (S.D. Cal. 2022) (same).[3] Plaintiffs in this case were among the plaintiffs in *Miller*. The State did not appeal either decision, rendering both judgments final. ER-005–07. The State remains permanently enjoined from enforcing Section 1021.11. *See* ER-008–09.

Plaintiffs then turned their focus to a handful of local governments from around the state. From December 2022 through February 2023,

---

[3] That court's decisions also purported to enjoin from enforcing Section 1021.11 "those who gain knowledge of this injunction order or know of the existence of this injunction order." *Miller*, 646 F. Supp. 3d at 1232; *S. Bay Rod & Gun Club*, 646 F. Supp. 3d at 1245. However, because Defendants were not parties to the *Miller* or *South Bay* litigation, these injunctions do not bind Defendants. *See* Plaintiffs-Appellants' Opening Brief ("AOB") 25; *see also* ER-007–08.

11

counsel for Plaintiffs sent individualized letters on different dates to seven cities and counties. ER-145–47, 149–51, 153–56, 161–63, 165–67, 172–74, 179–81. These local governments, Defendants in this case, were the cities of San Diego and San Jose and the counties of Alameda, Imperial, Los Angeles, Santa Clara, and Ventura. ER-122, 125–26.

Although the exact contents of Plaintiffs' correspondences varied, they shared certain basic traits. First, each letter referenced lawsuits that Plaintiffs either had filed or might one day file against that local government's distinct firearms policies or regulations. *See* ER-147, 149, 153, 161, 165, 172, 179; *see also* ER-011–12. Each letter also demanded that the recipient enter into a written stipulation that it would refrain from seeking to enforce Section 1021.11 in any ongoing or future lawsuit involving Plaintiffs or their counsel. ER-147, 150, 155, 163, 167, 174, 181. If the recipient did not accede to Plaintiffs' precise demands, the letters threatened, Plaintiffs would read that silence as "confirmation" that the recipient would "intend to seek remedies under Section 1021.11." *See id.* Finally, each letter threatened to sue the local government if it did not agree to the stipulation on Plaintiffs' exact terms within a week. *Id.*

Defendants did not respond to Plaintiffs' letters in any coordinated or uniform fashion. ER-011–12; *see also* ER-136–39. Several Defendants rejected Plaintiffs' ultimatum outright. ER-136–37, 158–59, 176–77 (City of San Diego, County of Alameda, City of San Jose). One Defendant declined to accede to the specific demands in Plaintiffs' letter, but suggested that it may be willing to enter into a case-specific stipulation regarding Section 1021.11 if Plaintiffs ever actually filed suit against the County or offered more information about Plaintiffs' hypothetical future lawsuits. ER-169–70 (County of Los Angeles). The remaining Defendants simply did not respond to Plaintiffs' demand letters. ER-011–12; *see also* ER-137–39 (County of Imperial, County of Ventura, County of Santa Clara).

### B.   Procedural History

On March 2, 2023, Plaintiffs filed a single lawsuit against all seven Defendants in the U.S. District Court for the Southern District of California. *See* ER-122. Their Complaint alleged that Section 1021.11 violates the First Amendment, the Supremacy Clause, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution. ER-128–36, 140–42. Plaintiffs sought a judgment declaring Section 1021.11 unconstitutional and preliminary and permanent

injunctions barring Defendants from "enforc[ing] or appl[ying]" Section 1021.11's fee-shifting provision against Plaintiffs "in any litigation involving Defendants." ER-142–43.

The Complaint did not allege (1) that any Defendant had played a role in the Legislature's enactment of Section 1021.11; (2) that Defendants had formulated any shared policy or plan regarding Section 1021.11; (3) that any Defendant had previously attempted to enforce Section 1021.11; or (4) that any Defendant had stated that it intends to enforce or apply Section 1021.11 in the future. *See* ER-007–10, 122–43.

Less than two weeks later, and of its own volition, the district court issued an Order to Show Cause to Plaintiffs. ER-007. The Order directed Plaintiffs to address why they have Article III standing, why their claims are ripe, why venue is proper in the Southern District of California, and why their claims against each Defendant are properly joined in one suit. *Id.* Both Plaintiffs and Defendants filed briefs addressing the Court's Order.[4] *Id.*

---

[4] Shortly after the district court issued the Order to Show Cause, Plaintiffs filed a motion for preliminary and permanent injunctions. *See* ER-013, 083. The district court deferred all further briefing on this motion pending resolution of the Order to Show Cause. Dist. Ct. Dkts. 45, 50. It

The district court then dismissed the case with prejudice, concluding it lacked subject matter jurisdiction. ER-004 (Judgment); ER-005–13 (Order). It first held that Plaintiffs lack Article III standing. ER-007–09. The court emphasized that Plaintiffs suffered no injury in fact because the permanent injunctions entered in *Miller* and *South Bay*—combined with Defendants' total lack of expressed intent to take advantage of Section 1021.11—rendered it vanishingly unlikely that Defendants would ever seek to enforce the statute against Plaintiffs. *Id.*; *see also* ER-009 (explaining Plaintiffs could not prove an "imminent injury" simply because Defendants had "decline[d] to make a hypothetical commitment as to how they would litigate lawsuits that have not even been filed"). The district court also explained that insofar as Plaintiffs took issue with Section 1021.11 itself, the proper recourse was an action to enjoin *state* officials from enforcing this *state* statute—exactly the relief the plaintiffs in *Miller* and *South Bay* had already sought and attained. ER-008–09. For the same reasons, the court also concluded that Plaintiffs' claims are not ripe. ER-010–11.

―――――――――――

later denied the motion as moot when it dismissed the case for lack of subject matter jurisdiction. *See* ER-004, 013.

15

The district court went on to hold that even if it did have subject matter jurisdiction, Plaintiffs' suit was procedurally defective and the claims against nearly all Defendants would need to be dismissed. It first determined that all Defendants were misjoined in this single action, as Plaintiffs' claims against each Defendant arose out of distinct transactions and occurrences. ER-011–12. Thus, the claims against each Defendant would need to be severed. *Id.* (citing Fed. R. Civ. P. 21). And, the court concluded, once the claims were severed, venue would be "improper and prejudicial" as to the five Defendants that are not residents of the Southern District of California. ER-012. As a result, the court held that even if Plaintiffs had standing, "joinder and venue would bar the action against" the non-resident Defendants. *Id.*

Plaintiffs appealed. ER-182–83. Soon after filing their notice of appeal, Plaintiffs moved in the district court for an injunction that would bar all Defendants from invoking Section 1021.11 while the appeal is pending. *See* ER-014. Then, before the district court could rule on that motion, Plaintiffs filed a motion in this Court seeking a virtually identical injunction. Dkt. 14. The district court denied Plaintiffs' motion on April 8, 2024. Dist. Ct. Dkt. 66. The next day, a panel of this Court granted

Plaintiffs' concurrent motion and enjoined Defendants from enforcing Section 1021.11 during the pendency of the appeal. Dkt. 28.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for lack of Article III standing or ripeness. *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1247 (9th Cir. 2016). It reviews for clear error any factual findings underlying the standing and ripeness analysis. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528 (9th Cir. 2019).

District courts are vested with "broad discretion" to determine that parties are improperly joined and to dismiss all claims against those misjoined parties. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000). This Court reviews such determinations only for an abuse of discretion. *Id.* at 1296–97.

## SUMMARY OF THE ARGUMENT

Plaintiffs' case suffers from numerous jurisdictional and procedural defects. Each independently supports the district court's dismissal of Plaintiffs' claims.

First, the district court correctly dismissed this case with prejudice because Plaintiffs lack Article III standing. Specifically, Plaintiffs have not suffered any pre-enforcement injury because they have not shown that there is a "specific, credible threat" that Defendants will attempt to enforce Section 1021.11 against them. *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010). As the district court recognized, there is no legitimate risk that Defendants will ever try to invoke Section 1021.11, given that (1) a federal district court has now declared Section 1021.11 unconstitutional, (2) all California state officials have been permanently enjoined from enforcing it, and (3) Defendants played no role in Section 1021.11's adoption and have never suggested that they will enforce it.

Plaintiffs lack standing for the additional reason that Defendants did not cause Plaintiffs' alleged injuries. When a *state* enacts a law that plaintiffs believe is unconstitutional, the proper defendants are the *state* officials that adopted and enforce it. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157–58 (10th Cir. 2005). In *Miller*, Plaintiffs sought and obtained all available relief from California state officials. Article III does not allow a plaintiff who wishes to challenge a state law to go on to name as a defendant "anyone who, under appropriate circumstances, might

18

conceivably have an occasion to file a suit" under that law. *Id.* Plaintiffs are doing exactly that here, and thus they lack standing for the same reason as the plaintiffs in *Nova Health Systems*.

Furthermore, the district court did not abuse its discretion in concluding, in the alternative, that Plaintiffs had improperly joined all Defendants in this single action. Permissive joinder requires *both* (1) a common question of law or fact, *and* (2) an asserted right to relief against all defendants arising from the same transaction, occurrence, or series of transactions or occurrences. *Rush v. Sports Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015). The second criterion is not satisfied here. No single transaction or occurrence links Plaintiffs' claims against each of the seven local government Defendants.

By itself this joinder defect would require dismissal of Plaintiffs' claims against virtually all Defendants. *See* Fed. R. Civ. P. 21. But dismissal of the five non-resident Defendants is also necessary because venue is improper in the Southern District of California. Plaintiffs have never identified any connection of these non-resident Defendants to the Southern District that would confer venue.

Finally, this Court should decline Plaintiffs' audacious request to reach the merits. Because of the many jurisdictional and procedural defects in Plaintiffs' case, neither Defendants nor the district court had either the need or the opportunity to address the merits below. Thus, even if their many procedural defects did not defeat Plaintiffs' claims, the prudent course would be to remand this case so the district court can consider the merits arguments in the first instance.

## ARGUMENT

### I. Plaintiffs lack Article III standing for multiple reasons.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Thomas*, 220 F.3d at 1138. A justiciable case or controversy requires a plaintiff with standing to assert ripe claims. *Id.* Neither prerequisite is satisfied here. First, Plaintiffs lack standing because they have suffered no pre-enforcement injury and, even if they had, such injury would not be attributable to Defendants. Second and for the same reasons, Plaintiffs' claims are not ripe. Accordingly, the district court properly dismissed Plaintiffs' claims for lack of subject matter jurisdiction.

## A. Plaintiffs have not experienced any pre-enforcement injury that would confer standing.

The "irreducible constitutional minimum of standing contains three elements" that all plaintiffs must demonstrate: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). The injury-in-fact element requires a harm that is "concrete and particularized" and not "conjectural or hypothetical." *Id.* at 560. Plaintiffs need not necessarily violate a statute and be prosecuted for it to prove their standing to challenge the statute. *Lopez*, 630 F.3d at 785. However, in these "pre-enforcement cases," plaintiffs still must establish a "specific" and "credible threat" that the defendant will enforce the law against them. *Id.* at 785, 788. A defendant's preliminary or prior efforts to enforce a statute provide "strong evidence" of whether the plaintiff faces a credible threat of future enforcement. *Id.* at 786.

Here, as the district court correctly held, Plaintiffs lack standing because they have not established a realistic threat that these Defendants will ever invoke Section 1021.11 against them. ER-007–10. There are numerous reasons for this. First, Defendants did not enact Section

1021.11—the State of California did. In fact, the first and only connection that Defendants had with Section 1021.11 was in Plaintiffs' pre-litigation letters demanding that Defendants agree not to use it. Second, there are now two final federal district court decisions declaring Section 1021.11 unconstitutional on multiple grounds and broadly enjoining all California state officials from enforcing it. *See Miller*, 646 F. Supp. 3d at 1232; *S. Bay Rod & Gun Club*, 646 F. Supp. 3d at 1245. Third, and relatedly, Defendants have never invoked Section 1021.11 and have never signaled that they intend to do so. As in *Lopez*, this unusual combination of factors means that Plaintiffs cannot meet even "the low threshold of clearly showing that [they] face[] a specific, credible threat" of Defendants' enforcement of Section 1021.11. 630 F.3d at 792.

Plaintiffs now press two primary challenges to the district court's sound conclusion that they have not suffered a pre-enforcement injury. First, they maintain that the district court should have *presumed* that Defendants would enforce Section 1021.11 and then shifted the burden to Defendants to counter that presumption. AOB 19–23. Second, Plaintiffs insist they have standing because Defendants have failed to disavow

enforcement of Section 1021.11. AOB 23–24, 27–28. Both arguments are wrong.

At the outset, as Plaintiffs' long string citation to out-of-circuit cases lays bare (OB 20–21), *this* Circuit has never applied a presumption that a government will enforce every new law, thereby shifting to the government the burden to prove the negative. Instead, the district court correctly applied this Circuit's standard: *Plaintiffs* must prove "an actual or imminent injury to a legally protected interest" by "demonstrating a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." ER-009 (citing *Lopez*, 630 F.3d at 785). And it properly found that Plaintiffs do not satisfy that standard. ER-009–10.

In any event, such a presumption of enforcement could not apply here for two reasons. First, in *every* case on which Plaintiffs rely, the government defendants had adopted the challenged statute or were expressly tasked with enforcing it. *See* AOB 20–22.[5] In those

---

[5] Citing *Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) (suit against village officials challenging village ordinance); *Bryant v. Woodall*, 1 F.4th 280 (4th Cir. 2021) (suit against state officials explicitly charged with enforcing challenged state laws); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8 (1st Cir. 1996) (same); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65 (2d Cir. 2019) (same); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) (same); *Bland v. Fessler*,

circumstances, it makes sense to presume the defendant "legislature enact[ed the] statute with the intent that it be enforced." *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021); *see also Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996) (emphasizing, in a case finding pre-enforcement standing, that the defendant "Attorney General sponsored the bill" and the "California legislature intended the Attorney General to enforce" it). But those are not the facts here. The California State Legislature enacted Section 1021.11 and the governor signed it into law. Defendants played no part in this process. Nor does Section 1021.11 direct Defendants or other local governments to enforce anything. *See* Cal. Civ. Proc. Code § 1021.11(c) (specifying a prevailing party "may" seek to recover its fees and costs). Whatever the adoption of Section 1021.11 may imply about

---

88 F.3d 729 (9th Cir. 1996) (same); *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) (suit against federal officials charged with enforcing challenged federal laws); *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) (suit against state officials explicitly charged with enforcing challenged state laws, where state wildlife department and county district attorneys were given express power to enforce state statute); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) (suit against state officials explicitly charged with enforcing challenged state laws); and *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010) (suit against community college officials in action challenging college's student conduct policies).

the intentions of state officials, it implies nothing about the local government Defendants.

Second, though Section 1021.11 may not be old, it is certainly "moribund." *See Doe v. Bolton*, 410 U.S. 179, 188 (1973) (recognizing laws are more likely to present a credible threat of enforcement when they are "recent *and* not moribund" (emphasis added)); *see also, e.g.*, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (citing *Doe*'s "recent and moribund" language in support of presumption of enforcement). Section 1021.11 has been declared unconstitutional for multiple reasons in two now-final federal district court decisions. *Miller*, 646 F. Supp. 3d at 1232; *S. Bay Rod & Gun Club*, 646 F. Supp. 3d at 1245. Those same decisions permanently enjoin all California state officials from enforcing Section 1021.11. *See id.* And while Defendants are not bound by those judgments, the decisions' evisceration of Section 1021.11 will dissuade any other party from relying on the statute. *See* ER-007–08. Unsurprisingly, Plaintiffs have not pointed to a *single* attempt by *any* entity to invoke Section 1021.11. It is a dead letter.

Accordingly, Plaintiffs cannot show standing merely by pointing to the alleged failure of Defendants to disavow Section 1021.11. Regardless,

25

they also misrepresent Defendants' responses to their demand letters. *See* AOB 23–24, 28–29. What Defendants declined to do was agree—on Plaintiffs' terms and timeline—to an amorphous prohibition on invoking Section 1021.11 against an unspecified collection of Plaintiffs or their counsel in some hypothetical future suit or suits.[6] *See* ER-009, 136–39, 145–47. Defendants turned Plaintiffs down because their demands were unreasonable—not because Defendants harbor some secret intent to enforce Section 1021.11. And throughout this litigation, Defendants have made clear that they have not invoked Section 1021.11 in the past and have displayed no intention of invoking it against Plaintiffs—or any other party—in the future. *See, e.g.*, ER-036–39, 054, 158; Dkt. 18 at 15–16 (Defendants' Opposition to Plaintiffs' Motion for Injunction Pending Appeal). Combined with the fact that (1) Defendants played no role in Section 1021.11's adoption, (2) all state officials have now been enjoined from enforcing it, and (3) a federal district judge has twice declared it

---

[6] Soon after they filed their notice of appeal, Plaintiffs once again demanded that Defendants stipulate to non-enforcement of Section 1021.11. ER-030. Given that the district court had just dismissed Plaintiffs' action for lack of Article III jurisdiction, Defendants again declined to accede to Plaintiffs' demands.

unconstitutional, these additional representations provide more than adequate assurance that Defendants will never seek to enforce Section 1021.11 against Plaintiffs.[7] *See Lopez*, 630 F.3d at 787.

Finally, Plaintiffs insist that Section 1021.11 is keeping them from filing lawsuits they would otherwise bring against Defendants. AOB 17, 27–28. But "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Because Plaintiffs face no legitimate threat that Defendants will invoke Section 1021.11, any chill that Plaintiffs experience is wholly self-imposed. Indeed, since Section 1021.11 took effect, numerous other organizations and individuals have filed or continued to prosecute suits that challenge Defendants' firearms regulations.[8] Plaintiffs remain free to do the same.

---

[7] For the same reasons that Plaintiffs have not suffered an injury for Article III standing purposes, the district court correctly found their claims unripe. *See* ER-010–11; *Thomas*, 220 F.3d at 1139 (explaining the ripeness inquiry "coincides squarely with standing's injury in fact prong").

[8] *See, e.g.*, *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, No. 22-cv-00501-BLF, 2023 WL 5209730 (N.D. Cal. July 28, 2023) (granting in part defendant City of San Jose's motion to dismiss a case that was filed on January 25, 2022, challenging City laws that require owners of firearms

27

### B. Plaintiffs also lack standing because Defendants are not responsible for their purported injuries.

The district court viewed the unique structure of Section 1021.11 and its procedural history—which the *State* unilaterally adopted and which the *State* was enjoined from enforcing—as posing mostly a problem of injury-in-fact. *See* ER-007–10. However, even if Plaintiffs had suffered some injury, they would still lack standing. It is California state officials and Section 1021.11 itself—not the local government Defendants—who have caused that alleged injury. *Lujan*, 504 U.S. at 560 (holding that to establish Article III standing, plaintiffs must prove an injury was caused by "the challenged action of the defendant, and not the result of the independent action of some third party").

---

to purchase an insurance policy and pay an "Annual Gun Harm Reduction Fee"); Complaint for Declaratory & Injunctive Relief, *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cty. Sheriff's Dep't*, No. 2:23-cv-10169 SPG (ADSx) (C.D. Cal. Dec. 4, 2023) (seeking declaratory and injunctive relief in action challenging the Los Angeles County Sheriff's Department's policies for issuing concealed carry permits); *McDougall v. County of Ventura*, No. 2:20-cv-02927 CBM (ASx) (C.D. Cal. July 31, 2023) (granting defendant County of Ventura's motion to dismiss complaint in action raising Second Amendment challenge to County's "Stay Well Order," which required the temporary closure of firearm stores and firing ranges during the COVID-19 pandemic).

The Tenth Circuit confronted a nearly identical scenario in *Nova Health Systems*. There, an abortion provider sued Oklahoma state officials who oversaw various medical institutions, seeking to have a state statute declared unconstitutional. The statute made abortion providers liable for the costs of any medical treatment a minor incurred after receiving an abortion without parental consent. 416 F.3d at 1153. Although none of the defendants had ever attempted to enforce the statute, the plaintiff argued they could try to do so in the future. *Id.* at 1156–57.

The Tenth Circuit held the plaintiff lacked standing because the defendants had not caused the plaintiff any injury. *Id.* at 1157–58. On the plaintiff's theory, the court noted, "*anyone* who might someday have a claim under [the statute] could be summoned preemptively before the federal courts to defend the constitutionality of that statute." *Id.* at 1157. The court explained that Article III does not permit a plaintiff who wants to challenge a state law to simply name as defendants "anyone who, under appropriate circumstances, might conceivably have an occasion to file a suit" pursuant to the state law. *Id.* at 1157–58.

The same principles apply here. Like the officials in *Nova Health Systems*, Defendants are not charged with enforcing Section 1021.11. At most, by enacting Section 1021.11, the *State* gave Defendants—and every one of the hundreds of other local governments in California that either has a firearms regulation on the books or might someday adopt one—the *opportunity* to invoke it in connection with some future lawsuit. But these seven Defendants have never taken that option or signaled that they will do so. The State is the sole cause of any alleged injury that Plaintiffs have incurred, and Plaintiffs have already sought and obtained relief against the State. Whatever incremental, amorphous "relief" Plaintiffs may want from these local government Defendants is not available to them under Article III.

## II. The district court correctly held, in the alternative, that the claims against the non-resident Defendants should be dismissed on procedural grounds.

Because Plaintiffs lack standing, this Court need not reach the district court's alternative holding that the claims against all non-resident Defendants must be dismissed without prejudice based on venue and joinder. However, this alternative holding was plainly correct. *See* ER-011–12. All Defendants are misjoined in this single action and venue is

30

also lacking as to the non-resident Defendants. Both defects independently warrant dismissal.

## A. The seven local government Defendants are not properly joined in this single action.

The Federal Rules of Civil Procedure permit a district court to drop misjoined parties from an action. Fed. R. Civ. P. 21. Because Rule 21 does not supply its own standard for misjoinder, courts look to whether Rule 20's requirements for the permissive joinder of parties are satisfied. 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1683 (3d ed. 2022). Under Rule 20, permissive joinder requires both (1) that the right to relief asserted against all defendants arises "out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) that the action raises a question of law or fact common to all defendants.[9] *Rush*, 779 F.3d at 974 (quoting Fed. R. Civ. P. 20(a)(2)). These two requirements implicate distinct concerns. Thus, the mere presence of a common question of law does not demonstrate the existence of a singular transaction or occurrence. *Golden Scorpio Corp. v. Steel Horse Bar &*

---

[9] Defendants do not contest that Plaintiffs' claims may implicate at least one question of law or fact common to all Defendants.

*Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009). In addition, permissive joinder of a defendant under Rule 20 must "comport with the principles of fundamental fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).

To satisfy the "same transaction or occurrence" requirement, it is not enough that all defendants are similarly situated or have violated the same law in comparable ways. *See Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1078–80 (C.D. Cal. 2002); *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012). Rather, plaintiffs must show "concerted action between defendants," *Spaeth*, 845 F. Supp. 2d at 53, or a "collective or controlling entity" that binds defendants to a shared, uniform policy, *Wynn*, 234 F. Supp. 2d at 1079–80.

Applying these principles, the district court properly determined that Defendants were misjoined in this single action. ER-011–12. The seven unrelated local government Defendants were not involved in the same transaction or occurrence. Plaintiffs have alleged no concerted action, agreement, or even communication among them. Their entire theory boils down to a pair of immaterial observations: (1) the California State Legislature has enacted a new law, and (2) Defendants have not

32

stipulated—on Plaintiffs' terms—that they will abstain from enforcing it in  hypothetical future cases. *See* AOB 30, 32.

These facts do not come close to establishing a concerted action or shared policy. Plaintiffs do not allege that Defendants played any role in the Legislature's enactment of Section 1021.11. *See* ER-126–27. And they do not allege that Defendants have ever attempted to apply Section 1021.11 or stated that they would in the future. Section 1021.11 therefore is not a policy developed by or binding upon Defendants and cannot constitute the "same transaction or occurrence" that unifies all of Plaintiffs' claims. *See Spaeth*, 845 F. Supp. 2d at 54 (requiring plaintiffs allege a "shared policy" pursuant to which each defendant actually acted); *Wynn*, 234 F. Supp. 2d at 1067 (same).

Defendants' individual interactions with Plaintiffs also evince no concerted action or common policy. Plaintiffs' demand letters were sent separately, on different dates, and referenced each jurisdiction's distinct firearms regulations.[10] *See* ER-145–47, 149–51, 153–56, 161–63, 165–67,

---

[10] The various defendant jurisdictions adopted their individual firearms regulations at different times, under their respective police powers. *See* Cal. Const. art. XI, § 7. Thus, these underlying regulations also are not a "common policy" that could unite Plaintiffs' claims.

172–74, 179–81. Plaintiffs received no joint or uniform response. Some Defendants declined Plaintiffs' demands outright; others suggested they may be amenable to a narrower, case-specific stipulation; and still others did not respond at all. *See* ER-136–37, 158–59, 169–70, 176–77; *see also* ER-011–12. To the extent Plaintiffs' claims arise from these interactions, rather than from Section 1021.11 itself, Plaintiffs have pointed to nothing more than distinct "autonomous . . . decisions," made "at different times, for different reasons," based on different underlying facts. *Wynn*, 234 F. Supp. 2d at 1080. That is far short of the common conduct or policy that could constitute the "same transaction or occurrence." *See id.*; *Spaeth*, 845 F. Supp. 2d at 54. Thus, because Plaintiffs cannot satisfy *both* of Rule 20's mandatory requirements, Defendants are misjoined. *Rush*, 779 F.3d at 974.

In this Court, Plaintiffs mostly rehash the same unavailing arguments they raised below. Ignoring the same transaction or occurrence requirement, they repeatedly reiterate that their claims against each Defendant are identical and insist that this was enough to justify joining all Defendants. *See* AOB 30, 32; *see also id.* at 3–4 (arguing joinder is appropriate solely "because this case raises only a question of law common to

all Defendants"), 17 (similar). As explained above, the plain text of Rule 20 and decades of this Court's precedent foreclose this view of joinder; common questions of law or fact are necessary but *not sufficient*. And, even when there is, fairness considerations may still weigh against allowing the defendants to be joined. *Desert Empire Bank*, 623 F.2d at 1375.

Plaintiffs also lean on the same inapposite cases that failed to sway the district court. AOB 30–32. Indeed, these cases only reinforce why Defendants are improperly joined here. In *Bryant v. California Brewers Association,* each defendant brewery had affirmatively signed on to and was bound by a single statewide collective bargaining agreement. *See* 585 F.2d 421, 452 (9th Cir. 1978) (noting that all breweries, as signatories to the agreement, "support and maintain the disputed contract provisions"), *vacated on other grounds*, *Cal. Brewers Ass'n v. Bryant*, 444 U.S. 598 (1980); *id.* at 423 n.1 (observing the agreement had been negotiated by a single brewery industry group). The coordination and formal agreement among defendants in *Bryant* is exactly what is missing in this case. As discussed above, Defendants did not participate in the State's adoption of Section 1021.11. They have entered into no common agreement about

35

its enforcement. And none has ever tried to enforce it. They are linked only by the happenstance of having each enacted a restriction on firearms and having apparently incurred Plaintiffs' discontent for doing so. None of this conduct reflects the sort of concerted action that *Bryant* found to satisfy Rule 20.

Similarly, in *United States v. Mississippi*, the complaint "charged a long-standing, carefully prepared, and faithfully observed plan" to disenfranchise Black voters, a plan "which the . . . statistics included in the complaint would seem to show had been remarkably successful." 380 U.S. 128, 135–36 (1965). Thus "*Mississippi* involved a clear nexus between all of the discriminating individuals . . ., namely a state-wide discriminatory voting registration law that each county enforced as an instrumentality of the state." *Wynn*, 234 F. Supp. 2d at 1080. As explained above, there is no "plan" here—much less one bearing the essential attributes in *Mississippi*. In the absence of an analogous statewide "plan," the *Mississippi* decision is not a blank check for plaintiffs to sue in a single action all entities that could theoretically avail themselves of a law that plaintiffs find objectionable.

Finally, as they did below, Plaintiffs appeal to policy considerations, implying that Rule 20 is "flexible" enough to allow joinder even when its blackletter requirements are not satisfied. *See* AOB 31–33. But the law is clear that policy or equity issues cannot trump Rule 20's twin requirements. *See Wynn*, 234 F. Supp. 2d at 1078 (emphasizing the two Rule 20 requirements are essential for joinder but their satisfaction does not make joinder mandatory, if fairness considerations weigh against joining the defendants). Regardless, any inconvenience that Plaintiffs may experience from dismissal does not outweigh the fundamental unfairness to misjoined Defendants of being forced to continue to litigate these unrelated matters in an improper venue, as explained below. *See Desert Empire Bank*, 623 F.2d at 1375.

In sum, the district court correctly concluded that all Defendants are misjoined in this single action. ER-011–12. And it did not abuse its broad discretion in holding that it would have severed and dismissed the claims against the non-resident Defendants—if it had had subject matter

jurisdiction over the case.[11] *See* ER-012; *see also* Fed. R. Civ. P. 21 (stating district court may drop misjoined parties from an action).

## B. Venue is improper as to the non-resident Defendants.

The district court also aptly held that venue issues "would bar the action against" the non-resident Defendants. ER-012. Plaintiffs' only basis for venue as to these Defendants was their joinder with the two resident Defendants.[12] *See* ER-124 (Complaint; asserting venue only under 28 U.S.C. § 1391(b)(1)); ER-012 (recognizing this concession); AOB 33 (citing only § 1391(b)(1)). Thus, because Defendants are *not* properly joined, venue is lacking as to these non-resident Defendants. *See id.*

---

[11] The district court correctly recognized that the dismissal of an entire action is not a remedy for misjoinder under Rule 21. *See* ER-012 (citing Fed. R. Civ. P. 21). The court therefore indicated that it would have (1) severed the claims against each individual Defendant, (2) dismissed without prejudice the claims against the non-resident Defendants, and (3) retained jurisdiction over the claims against one or both of the two resident Defendants. *See id.*

[12] By failing to raise any other arguments for venue either here or in the district court, Plaintiffs have forfeited those alternative theories multiple times over. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018). Nonetheless, the district court carefully scrutinized Plaintiffs' allegations and concluded both that the non-resident Defendants have no connection to the Southern District and that no alleged events involving them had occurred in the district. ER-012. Therefore, even if Plaintiffs had not forfeited all alternative bases for venue, those theories have no merit.

District courts routinely dismiss claims against misjoined, non-resident parties in these exact circumstances. *See U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 344–45 (S.D.N.Y. 2014); *Golden Scorpio Corp.*, 596 F. Supp. 2d at 1285–86; *see also* 28 U.S.C. § 1406(a) (allowing district court to dismiss case when venue is improper). The district court did not abuse its discretion by holding it would have done the same here if it had had subject matter jurisdiction.

## III.  This Court should not reach the merits of Plaintiffs' challenges to Section 1021.11.

Even if this Court were to reverse the lower court's dismissal, the Court should remand the case without reaching the merits. While this Court has equitable discretion to decide issues not ruled upon by the lower courts, the "general rule" is that a federal appellate court should "not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Indeed, the circumstances here are exactly like those in *Singleton*, where the Supreme Court held that the court of appeals had abused its discretion by reaching the merits issues in the first instance. *See id.* at 119–21 (explaining the petitioner had only filed a pre-answer motion to dismiss for lack of standing; had filed no answer or other pleading addressing the merits; and, on appeal from the district

39

court's order granting his motion to dismiss, had "limited himself entirely" to the standing issue). Because of the district court's prompt Order to Show Cause, Defendants only ever had the need and opportunity to litigate the Complaint's glaring jurisdictional and procedural defects. No Defendant has even answered. "In short," Defendants have "never been heard in any way on the merits of the case." *Id.* at 120. Accordingly, if this Court reverses, Defendants should have the opportunity to first address the merits in the district court.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's judgment of dismissal.

I hereby attest that all other parties on whose behalf the filing is submitted concur in the filing's content.

DATED: April 10, 2024    SHUTE, MIHALY &
                         WEINBERGER LLP


                         By: _____s/Matthew D. Zinn_____
                              MATTHEW D. ZINN
                              RYAN K. GALLAGHER

                              Attorneys for Defendants-Appellees
                              County of Alameda and County of
                              Santa Clara

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because this brief contains 6,875 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point New Century Schoolbook type.

DATED:  April 10, 2024          SHUTE, MIHALY &
                               WEINBERGER LLP


                               By:    s/Matthew D. Zinn
                               _____
                                   MATTHEW D. ZINN
                                   RYAN K. GALLAGHER

                                   Attorneys for Defendants-Appellees
                                   County of Alameda and County of
                                   Santa Clara