No. 24-472

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————

FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; AND SAN DIEGO COUNTY GUN OWNERS PAC,
*Plaintiffs-Appellants*,

*v.*

CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; AND COUNTY OF SANTA CLARA,
*Defendants-Appellees*.

————————

On Appeal from the United States District Court
for the Southern District of California
No. 3:23-cv-00400-LL-VET
Hon. Linda Lopez

————————

## APPELLANTS' REPLY BRIEF

————————

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Ave., Ste. 106
Sacramento, CA 95825
(916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
khrhodes@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 3

I.    Plaintiffs Have Standing To Sue Defendants ................................. 3

    A.    Defendants' Failure To Disavow Enforcement Of Section 1021.11 Establishes Plaintiffs' Standing ........................... 4

    B.    Plaintiffs' Concrete Constitutional Injury Belies Defendants' Argument About "Self-Imposed" Injury ................................. 10

    C.    *Nova Health Systems* Supports Plaintiffs' Standing ........................... 11

II.    Joinder Of All Defendants Is Proper ........................................... 13

III.    Venue Is Appropriate In The Southern District Of California .................... 16

IV.    The Court Should Reach The Merits And Enjoin 1021.11 As Unconstitutional ........................................................................ 17

CONCLUSION ........................................................................................ 20

CERTIFICATE OF COMPLIANCE ........................................................ 21

CERTIFICATE OF SERVICE ................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979)..................................................................1

*Bautista v. Los Angeles County*,
216 F.3d 837 (9th Cir. 2000) ................................................13

*Bland v. Fessler*,
88 F.3d 729 (9th Cir. 1996) .............................................1, 5, 6

*Cayuga Nation v. Tanner*,
824 F.3d 321 (2d Cir. 2016)......................................................6

*Coughlin v. Rogers*,
130 F.3d 1348 (9th Cir. 1997) ...............................................13

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010).......................................................................6

*In re EMC Corp.*,
677 F.3d 1351 (Fed. Cir. 2013)..............................................14

*KVUE, Inc. v. Moore*,
709 F.2d 922 (5th Cir. 1983) ....................................................5

*Laird v. Tatum*,
408 U.S. 1 (1972)....................................................................11

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
558 F.2d 914 (9th Cir. 1977) ..................................................14

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010) ....................................................7

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
638 F.3d 644 (9th Cir. 2011) ..................................................11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................11

*Mobil Oil Corp. v. Att'y Gen. of Va.*,
940 F.2d 73 (4th Cir. 1991) ......................................................5

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) ..............................................12

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) .................................................1, 7

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of HHS*,
    946 F.3d 1100 (9th Cir. 2020) .................................................3, 18, 19

*Singleton v. Wulff*,
    428 U.S. 106 (1976)........................................................................17

*Union Paving Co. v. Downer Corp.*,
    276 F.2d 468 (9th Cir. 1960) .........................................................13

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966).......................................................................14

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988).........................................................................5

**Statutes**

28 U.S.C. § 1391(b)(1).........................................................................16

CAL. CODE CIV. PROC. § 1021.11(a)........................................................8

**Treatises**

13A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 3531.5 (3d ed.)..........................................................11

7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 1653 (3d ed.)........................................................14, 15

iv

## INTRODUCTION

Defendants cannot escape the inevitable determination that Plaintiffs have standing to bring this pre-enforcement challenge and that Section 1021.11 is unconstitutional three times over. Despite arguing that Plaintiffs face no "real" risk of enforcement since Section 1021.11 is a "dead letter" after the opinions in *Miller* and *S. Bay Rod & Gun Club*, Defendants still cannot bring themselves to actually disavow an intention to enforce the statute. Instead, they say the Ninth Circuit allows them to keep equivocating, but the decisions in *Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996), and *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 485 (9th Cir. 2024), demonstrate otherwise, as does the Supreme Court's decision in *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). Defendants also make the irrelevant observation that they did not enact the law, but what matters is that Section 1021.11 gives them independent enforcement power to wield its cudgel. For the same reason, Defendants get nowhere by arguing that Section 1021.11 does not *require* them to seek fees but merely gives them the option to do so. The law gives Defendants the authority to enforce the statute, they have not disavowed using it, and as a result, Plaintiffs face the sort of credible threat of enforcement that confers standing under *Babbit*, *Bland*, and the many other cases Plaintiffs have cited.

Additionally, in arguing against Plaintiffs' standing, Defendants acknowledge that defeat on the merits really does appear certain, because Section 1021.11 is a

1

"dead letter" in light of the analysis in the district court decisions that "eviscerat[e]" the statute and enjoin the Attorney General from enforcing the fee-shifting law. Br. at 25. Yet they paradoxically ask the Court to remand the case without reaching the merits. Defendants' own admission about Section 1021.11's demise, however, demonstrates that a remand would serve no purpose other than delay—thereby continuing the harm that Defendants are inflicting by refusing to disavow enforcement of the onerous statute. The Court should reach the merits now and enjoin Defendants from enforcing Section 1021.11 for all the reasons set out in the Opening Brief.

As for joinder, the only dispute is whether Rule 20's transaction or occurrence requirement is satisfied. It is. Because Plaintiffs' claims share a common factual core and ask the same legal questions as to all Defendants, they are within Rule 20's reach. Although Defendants claim that joinder is not appropriate because of the slight factual variations in their firearms laws and responses to Plaintiffs' non-enforcement requests, this Court's cases have long made clear that Rule 20's "transaction or occurrence" test is satisfied when claims against separate defendants share a logical factual relationship and involve overlapping proof. Defendants' solution—that Plaintiffs file separate lawsuits against all seven Defendants in three different venues, all to answer a common constitutional question—defies Rule 20's

overriding considerations of fairness and efficiency. In short, joinder of all Defendants is appropriate.

The Court should reverse the judgment of dismissal. Because the "proper resolution [of the merits] is beyond any doubt," "injustice [will] otherwise result" to Plaintiffs from having to wait yet further to bring the claims they have been deterred from bringing, and the constitutional questions are "purely legal," the Court should reach the merits and enjoin the Defendants from enforcing this patently unconstitutional statute. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of HHS*, 946 F.3d 1100, 1110 (9th Cir. 2020).

## ARGUMENT

### I. Plaintiffs Have Standing To Sue Defendants.

Defendants do not dispute the key facts that establish Plaintiffs' standing (which must be taken as true in any event): (1) Plaintiffs identified substantive lawsuits they planned to bring challenging Defendants' firearm laws, each of which would trigger application of Section 1021.11 if any claim were unsuccessful; (2) each Defendant failed to disavow enforcement of the law; and (3) Plaintiffs refrained from suing each Defendant because of the threat that they would enforce the fee-shifting penalty. Yet Defendants insist that Plaintiffs have not suffered a sufficient injury to bring this case because there is not a "realistic threat" that they will invoke the statute. Br. 21. This is wrong.

**A.    Defendants' Failure To Disavow Enforcement Of Section 1021.11 Establishes Plaintiffs' Standing.**

It is helpful to review what Defendants have said about enforcement and what they have not. At every turn, Defendants' position has conspicuously stopped short of disavowing any intent to enforce Section 1021.11. Defendants could have disclaimed enforcement when responding to Plaintiffs' pre-litigation requests, in their Order to Show Cause briefing in the district court, when Plaintiffs reiterated their non-enforcement request after dismissal, or when opposing Plaintiffs' stay motions below and in this Court. Defendants repeatedly refused. Now they offer more of the same:

- They "have never invoked Section 1021.11 and have never signaled that they intend to do so," Br. 22;

- The *Miller* injunction "will dissuade any other party from relying on the statute," Br. 25;

- It is the Plaintiffs' fault for making "unreasonable" demands, Br. 26;

- "[T]hey have not invoked Section 1021.11 in the past and have displayed no intention of invoking it against Plaintiffs . . . in the future," Br. 26; and

- Plaintiffs should have "more than adequate assurance that Defendants will never seek to enforce" the law, Br. 27.

But Defendants again do not say that they **will not** enforce Section 1021.11 against Plaintiffs. Thus, Plaintiffs have standing. Defendants cannot defeat Plaintiffs' standing through oblique, non-denial denials.

As explained, *see* Pls.' Br. at 15, pre-enforcement challenges are justiciable when the government refuses to disavow enforcement of an allegedly

4

unconstitutional statute. This case fits squarely within that general rule. Just as in *Babbitt*, Section 1021.11 "on its face" applies to Plaintiffs' conduct, and Defendants "ha[ve] not disavowed any intention of invoking the [fee-shifting] provision against" Plaintiffs. 442 U.S. at 302. As a result, Plaintiffs "are thus not without some reason in fearing" enforcement and "the positions of the parties are sufficiently adverse . . . to present a case or controversy." *Id.*

This conclusion is bolstered by the presumption that government officials will enforce the law. As this Court explained in *Bland*, when the government has not disclaimed enforcement of a "newly enacted law" there is "no reason to assume" enforcement will not occur, particularly where an allegedly unconstitutional statute has impacted a plaintiff's conduct and poses the risk of self-censorship. 88 F.3d at 737 (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)). *Bland* accordingly found standing because the Attorney General "ha[d] not stated affirmatively that his office will not enforce the civil statute," and cited other circuit cases to that same effect. *Id.* (citing *Mobil Oil Corp. v. Att'y Gen. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (plaintiff had standing where "the Attorney General has not . . . disclaimed any intention of exercising her enforcement authority"); *KVUE, Inc. v. Moore*, 709 F.2d 922, 930 (5th Cir. 1983) (plaintiff had standing where "[t]he state has not disavowed enforcement")). The Attorney General's cagey enforcement posture in *Bland* mimics Defendants' statements here: He said only that his office

5

"'has not brought or indicated that it would bring any action' under the civil statute." *Id.* at 737 n.12. As here, such evasive statements fall "far short of a disavowal of enforcement," and provide "little comfort" for those who are within the statute's reach. *Id.* Because the harm from enforcement of Section 1021.11 is ruinous fee liability, only an explicit and binding disavowal suffices. *Bland* thus instructs that Plaintiffs are "allowed to test" an allegedly unconstitutional law when a government actor entrusted with enforcement power does not explicitly disavow enforcement. *Id.* at 737.

Defendants first dispute that the Ninth Circuit applies a presumption that new laws will be enforced. Br. 23. But that is the essential premise of both *Bland* and the Supreme Court's decision in *Babbit*. If the absence of disavowals in *Bland* and *Babbit* were sufficient to confer standing, the courts did not need to say they were applying a presumption of enforcement; requiring an affirmative disavowal operated exactly like a presumption that the laws would be enforced. *See also Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (allowing pre-enforcement challenge and noting "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("Courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'" (citation omitted)).

6

Defendants lean on *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010), to claim that Plaintiffs have not suffered an injury sufficient to confer standing. Br. 22, 23. Plaintiffs demonstrated in their opening brief (at 28–29) how *Lopez*'s radically different facts support standing here, and Defendants offer nothing in response to those points. In any event, *Lopez* is not this Court's final word on the issue. Earlier this year, the Court reiterated in *Peace Ranch* that a plaintiff's choice to either act and risk enforcement under a challenged statute, or to refrain from acting—as Plaintiffs have experienced here in classic rock/hard place fashion—is "the precise dilemma that supports pre-enforcement standing." 93 F.4th at 485. *Peace Ranch* is dispositive. The Court explained that the "substantial threat of enforcement" prong of the standing inquiry "often rises or falls with the enforcing authority's willingness to disavow enforcement." *Id.* at 490. There, as here, the defendant "refuse[d] to disavow [his] intent to enforce" the challenged statute and employed a familiar evasive maneuver: The defendant "stopp[ed] short of stating its intention to enforce" the law and in "briefing diligently avoid[ed] taking a stance" on disavowal. *Id.* The government's equivocal stance was "enough to substantiate the threat [of enforcement] and satisfy" the pre-enforcement test for standing. *Id.* Just so here.

Defendants offer three arguments as to why the presumption of enforcement nevertheless should not apply here, none of which is correct:

1. Defendants first invent a novel test that looks to whether they were responsible for *enacting* Section 1021.11. Br. 22. So far as Plaintiffs can gather, the argument goes that when a state enacts a statute, only state (and not local) officials can be sued. Br. 18, 21. Not surprisingly, Defendants offer no legal authority to support this theory, which they derive from the fact that in the usual lawsuit a plaintiff challenges a state statute that invests *only* state actors with enforcement authority. But here the text—which Defendants ignore—is not so limited. The statute expressly confers independent enforcement authority in every "political subdivision," "government entity," and "public official" in California, including each and every local jurisdiction Defendant. CAL. CODE CIV. PROC. § 1021.11(a). By the law's plain terms, Defendants are "tasked with enforcing" Section 1021.11, Br. 23, and have chosen to retain the option to do so against Plaintiffs.

2. In a related argument, Defendants claim the cases cited in the Opening Brief allegedly turn on whether the enforcing jurisdiction was "*expressly tasked* with enforcing" a challenged law. Br. 23 (emphasis added). Section 1021.11 satisfies Defendants' own test by conferring enforcement authority in "political subdivision[s]" and "government entit[ies]" within California—phrases that encompass all Defendants. Regardless, the question isn't whether the government is *directed* to enforce a law. If the statutes at issue in the many cases cited in the Opening Brief gave law enforcement no discretion whether to enforce a law, none

8

of these cases would have reached the court of appeal because the plaintiffs' standing would have been obvious: if the government attorneys had no discretion to refrain from enforcing, the plaintiffs would have faced a threat of enforcement. The very concept of "disavowal" assumes discretion; indeed, a prosecuting jurisdiction could not disavow a mandatory duty. So, contrary to Defendants' suggestion, it does not matter that Section 1021.11 says that local jurisdictions "may" pursue fees: Defendants here are in exactly the same position as the Attorney General in *Bland*, which had the option to seek civil penalties, or the state government in *Babbitt*, which had the option of declining to enforce the criminal penalty provisions. In short, while Section 1021.11 may not "direct Defendants or other local governments to enforce anything," Br. 23, the only relevant point is that the fee-shifting law gives Defendants **authority** to enforce it—and they have not disavowed that authority.

3.     Defendants assert that Section 1021.11 is "moribund" and a "dead letter" because of the district court injunctions in *Miller* and *S. Bay Rod & Gun Club*. Br. 25; *see also* Br. 22. Critically, though, Defendants concede that they are not bound by these injunctions. Br. 11 n.3, 25. And Defendants do not deny that the existing injunctions would therefore do Plaintiffs no good in a lawsuit challenging Defendants' firearm regulations. If Section 1021.11 really is obsolete, why will Defendants not simply disavow enforcement? Defendants' oblique statements about enforcement cannot be squared with their position that Section 1021.11 has no force.

Moreover, if Defendants believe Section 1021.11 cannot be enforced, why would they ask the Court to remand for a determination on the merits if the Court reverses based on standing? What is there to determine below if the law is "dead"? Plaintiffs certainly agree that Section 1021.11 cannot constitutionally be enforced. But Defendants apparently want to keep the case alive so that they can continue to benefit from one of the very reasons Section 1021.11 is unconstitutional: it is shielding them from litigation by singling out firearms claims for *in terrorem* deterrence.

### B.   Plaintiffs' Concrete Constitutional Injury Belies Defendants' Argument About "Self-Imposed" Injury.

Defendants offer the additional theory that Plaintiffs are to blame for being too cautious. Defendants dismiss Plaintiffs' constitutional injury as a "self-imposed" "subjective chill" because Section 1021.11 has not choked off *all* firearms litigation against them. Br. 27 & n.8. It is of course irrelevant that other parties with other attorneys have sued over other laws. And no one could reasonably question Plaintiffs' determination to file firearms lawsuits when they are not threatened by ruinous fee liability.[1] In any event, the concept of "subjective chill" has no

---

[1] The record details some of Plaintiffs' many previous cases against state and local officials in California. ER-058–059, 064–065, 069. And Plaintiffs have continued to bring cases against the State since the *Miller* injunction was entered. *See, e.g.*, *Carralero v. Bonta*, C.D. Cal. No. 8:23-cv-1798 (filed Sept. 26, 2023); *Richards v. Bonta*, S.D. Cal. No. 3:23-cv-793 (filed May 1, 2023); *Hoffman v. Bonta*, S.D. Cal. No. 3:24-cv-664 (filed April 11, 2024).

10

application here given the detailed and specific constitutional injuries Plaintiffs have documented, which qualify as both "specific present objective harm" and "a threat of specific future harm" tied to Defendants. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).[2]

### C. *Nova Health Systems* Supports Plaintiffs' Standing.

Defendants pull together an ancillary argument that even if Plaintiffs suffered injury, that injury is tied to the State's enactment of Section 1021.11 and not the local jurisdictions that share enforcement authority. Br. 28. This fails on first principles, as the above discussion makes clear: Plaintiffs' harm does not somehow stem from "Section 1021.11 itself." Br. 28. The bare words on the pages of the statute books are not harming Plaintiffs. Rather, Plaintiffs' injury is caused by Defendants' retention of enforcement authority that puts Plaintiffs in the fee-shifting law's crosshairs. Thus, there is a direct "causal connection" between Plaintiffs' injury and Defendants' conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) ("[A]

---

[2] While the claim that Plaintiffs' harm is "self-imposed" is meritless to begin with, it is also a thin reed on which to base a standing challenge. As Wright & Miller explain: "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury . . . . Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain." 13A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3531.5 (3d ed.).

11

plaintiff is presumed to have constitutional standing to seek injunctive relief when it is the direct object of [government] action challenged as unlawful[.]").

To support this theory, Defendants place an unusual amount of reliance on the Tenth Circuit's decision in *Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005). Br. 28–30. That case highlights why Plaintiffs have standing. *Nova Health* held that an abortion provider lacked standing to sue various public officials who were loosely connected with an Oklahoma parental-consent statute. The provider submitted "no evidence" to tie its potential harm to the government defendants, who were "not charged with enforcing" the challenged law, and who could only conceivably enforce it through a convoluted series of events. *Id.* at 1157, 1158.

Plaintiffs do not quibble with these general principles, as they all point in favor of standing here. Unlike in *Nova Health*, Plaintiffs are not relying on a speculative daisy-chain of events—they have already suffered concrete constitutional injury. Plaintiffs have provided evidence confirming their ongoing harm due to Section 1021.11's threat of ruinous liability that shuts them out of court. Defendants are charged with explicit authority under the fee-shifting law that they continue to wield by refusing to disavow enforcement. And Plaintiffs do not seek "amorphous 'relief,'" Br. 30, they just want to exercise their constitutional rights.

In sum, Plaintiffs have pre-enforcement standing to sue all Defendants.

## II.    Joinder Of All Defendants Is Proper.

Because this case raises only a question of law common to all Defendants,[3] the only dispute for joinder purposes is whether Rule 20's transaction or occurrence requirement is satisfied. It is.

On that score, Defendants' main claim is that Plaintiffs "must show 'concerted action between defendants,' or a 'collective or controlling entity' that binds defendants to a shared, uniform policy." Br. 32 (citations omitted). This argument is doubly flawed.

First, it overreads isolated language from a few district court opinions to create the mirage of a strict test. But that is not the correct standard. This Court has long interpreted the "transaction or occurrence" requirement to "refer[] to similarity in the factual background of a claim." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *see also Bautista v. Los Angeles County*, 216 F.3d 837, 842–43 (9th Cir. 2000) (interpreting "transaction or occurrence" to require "similarity in the factual background of a claim"). Accordingly, claims that have a "very definite logical relationship" arise out of the same transaction or occurrence. *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960). As the Federal Circuit has explained, "independent defendants satisfy the transaction-or-occurrence test of

---

[3] Never content to surrender any ground, Defendants concede only that "Plaintiffs' claims may implicate at least one question of law or fact common to all Defendants." Br. 31 n.9.

Rule 20 when there is a logical relationship between the separate causes of action. The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2013); *see also* 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed.) (observing that courts are "inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense"). These straightforward principles confirm that Plaintiffs' claims—that share a common factual core and ask the same legal questions as to all Defendants—are within Rule 20's reach.

More fundamentally, Defendants' argument ignores the key concerns governing courts' discretion under Rule 20. "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Accordingly, the joinder rules are "to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). On the whole, "[t]he transaction and common-question requirements . . . are not rigid tests,"

but rather "are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." WRIGHT & MILLER § 1653 (footnote omitted). These considerations of fairness and efficiency overwhelmingly weigh in favor of joinder.

Under the controlling authorities, therefore, it does not matter that Defendants did not share a "concerted action or common policy," Br. 33, or that Plaintiffs sent slightly different letters to each Defendant and the Defendants did not respond identically, Br. 34. What matters is that Plaintiffs' claims against each Defendant have a logical relation to each other: Plaintiffs have asserted an identical legal claim against each Defendant based on the same general set of facts. These claims obviously involve factual similarities and overlapping proof. It would undermine the judicial economy thrust of Rule 20 to force Plaintiffs to bring seven separate suits against seven separate Defendants in three different venues to settle the same constitutional question. Rule 20 exists to avoid precisely that situation.[4]

Additionally, it makes no difference that the Defendants "adopted their individual firearms regulations at different times, under their respective police

---

[4] Defendants' efforts to distinguish Plaintiffs' illustrative authorities based on minor factual dissimilarities, Br. 35–36, are beside the point. These cases serve to prove what is manifest: That Rule 20's overriding principle of liberal construction in favor of joinder applies with particular urgency in civil rights cases like this one, where there is no genuine reason to force plaintiffs to litigate a common constitutional question on multiple fronts.

powers." Br. 33 n.10. Those distinctions matter only on the merits of the very lawsuits Section 1021.11 thwarts Plaintiffs from bringing. They have nothing to do with the question presented in this dispute (*i.e.*, whether Section 1021.11 is constitutional).

Along the way, Defendants rightly acknowledge that fairness considerations weigh in the joinder decision. Br. 35, 37. Notably absent from the opposition, however, is any explanation for why there is "fundamental unfairness," Br. 37, or any prejudice whatsoever to any Defendant by having Plaintiffs' claims tried in a single action. Defendants offer only the bare assertion that joinder is somehow unfair to the out-of-district Defendants because venue is improper. While the premise of this circular argument is flawed (see *infra*, § III), it is hard to fathom what unfairness stems from requiring all Defendants to litigate in the Southern District. Worse, Defendants entirely ignore the patent unfairness that their reading of Rule 20 imposes on Plaintiffs.

Plaintiffs' claims satisfy Rule 20's joinder requirements as to all Defendants.

## III.    Venue Is Appropriate In The Southern District Of California.

The venue question is narrow and is perhaps the only place where the parties find a small measure of common ground. A "civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Venue is proper in the

Southern District of California because the City of San Diego and the County of Imperial both reside there, and the remaining Defendants all reside in California. Defendants' only response is that venue is improper because the out-of-district jurisdictions were not properly joined. The flip side is correct: As just discussed, joinder is proper as to all Defendants, so it follows that venue is appropriate.

## IV.  The Court Should Reach The Merits And Enjoin 1021.11 As Unconstitutional.

Defendants ask the Court to remand without reaching the merits if it reverses the judgment. Defendants say they need the "opportunity" to address Plaintiffs' arguments. Br. 39–40. But a few pages earlier, Defendants pronounce Section 1021.11 a "dead letter" because the decisions in *Miller* and *S. Bay Rod & Gun Club* have "eviscerat[ed]" the law. Br. 25. Not only have Defendants failed to offer any hint that they have a merits argument to make on remand, they appear to acknowledge that they will lose on the merits. Defendants apparently hope to delay the inevitable so they can continue to avoid having their regulations challenged in court.

Defendants argue that their situation is "exactly" like *Singleton v. Wulff*, 428 U.S. 106 (1976). Br. 39. But the cases are not at all alike: In *Singleton*, the Court determined that it was inappropriate to consider the merits because it had "no idea" what evidence or legal arguments the defendant would present to defend the challenged law. *Id.* at 120. The opposite is true here. All arguments about Section

17

1021.11's unconstitutionality are before the Court and Defendants offer not even a whimper to defend the law. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of HHS*, 946 F.3d 1100, 1110 (9th Cir. 2020), which builds on *Singleton*'s rule, confirms that a remand is not warranted here.

Defendants did not even bother to cite or engage with *Planned Parenthood*, the controlling authority that Plaintiffs discussed at length in their opening brief. Nor did Defendants respond to any of the other authority on this question that demonstrates why the Court should reach the merits without delay. *See* Pls.' Br. 33–35, 45–46. The Court should not reward Defendants' persistent refusal to engage.

To reiterate: Each of the considerations guiding this Court's discretion to consider the merits in the first instance are present here: The "proper resolution is beyond any doubt," "injustice [will] otherwise result" to Plaintiffs, and the constitutional questions are "purely legal." *Planned Parenthood*, 946 F.3d at 1110 (internal citations omitted). Beyond that, further delay works continued and severe constitutional harm on Plaintiffs (who have been shut out of court by Section 1021.11's fee-shifting penalty), and Plaintiffs' constitutional challenge raises a significant question of law. *Id.*

Defendants have had plenty of opportunity to defend Section 1021.11 on the merits. Defendants appear to have placed a bet that by not briefing the constitutional issues they can keep this case going a bit longer—and in doing so, continue to benefit

18

from Section 1021.11's chilling effect. This Court rejected a similar gambit by the federal government when it tried to dodge the merits in *Planned Parenthood*: "HHS did have the opportunity to address the merits issues, because Planned Parenthood did so in its opening brief and HHS chose to address standing and mootness but not the merits in its response." 946 F.3d at 1112 n.2. It should follow the same course here.

\* \* \*

Defendants' blithe dismissal of Plaintiffs' constitutional rights cannot stand. Defendants refused at the outset to disavow enforcement, made repeated evasive statements, argued that Plaintiffs must fight on seven fronts, and now claim that the case should be sent back down to the district court. Section 1021.11's imposition of ruinous fee liability to deter firearms litigation is unconstitutional, and nobody in this case has ever seriously contended otherwise. Its chilling effect is also real, and continues to deter Plaintiffs and their members from challenging firearms restrictions in California.

**CONCLUSION**

This Court should reverse, and it should hold California Code of Civil Procedure § 1021.11's fee-shifting regime unconstitutional and direct that Defendants be enjoined from enforcing it.

Respectfully submitted,

s/ Bradley A. Benbrook

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Ave., Ste. 106
Sacramento, CA 95825

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

*Counsel for Plaintiffs-Appellants*

20

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because this brief contains 4,592, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

Dated: May 1, 2024

s/Bradley A. Benbrook
Bradley A. Benbrook

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Bradley A. Benbrook</u>
Bradley A. Benbrook